OLEG ELKHUNOVICH (269238)
oelkhunovich@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone (310) 789-3100
Facsimile (310) 789-3150

JOSEPH S. GRINSTEIN (TX 24002188) (*pro hac vice* to be filed)
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone (713) 651-9366
Facsimile (713) 654-6666

JACOB W. BUCHDAHL (NY 2903383) (*pro hac vice* to be filed)
jbuchdahl@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Telephone (212) 336-8330
Facsimile (212) 336-8340

Attorneys for Plaintiff Skybell Technologies, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| SKYBELL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RING INC., <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Skybell Technologies, Inc. ("Skybell" or "Plaintiff") files this Complaint for patent infringement against Defendant Ring Inc. ("Ring" or "Defendant"), and alleges as follows:

# INTRODUCTION

1. This lawsuit is the tale of two companies in the emerging video doorbell market. The plaintiff SkyBell is the technological and intellectual market leader. As of the date of this complaint, Skybell's innovations have been recognized in 71 issued U.S. patents (47 utility and 24 design patents), by far the most of any company in the field. And that innovation pays off for consumers in SkyBell's products: SkyBell routinely beats its industry competitors in head-to-head product reviews (including those conducted by the New York Times, CNET, and Entrepreneur, to name just a few).

2. Ring, by contrast, has taken a different approach. Ring has devoted its attention and resources to advertising and marketing, which no doubt has contributed to its familiarity among consumers. But Ring has not had nearly the same success with research and development. Ring has only three issued patents to its name, and its consistent approach to video doorbell technology is to copy from Skybell.

3. Ring has every right to attempt to compete with Skybell via hype rather than innovation. What Ring may not do, however, is compete by theft. Ring has knowingly and repeatedly trampled upon SkyBell's patent rights. SkyBell brings this lawsuit to redress that infringement and ensure fair competition within the video doorbell market.

# NATURE OF THE ACTION

4. This is an action under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., for infringement by Ring of certain claims of U.S. Patent Nos. 9,055,202; 9,179,109; and 9,179,107 (collectively referred to as the "Patents-in-Suit").

## THE PARTIES

5. SkyBell is a corporation duly organized and existing under the laws of Nevada, having its principal place of business at 1 Jenner #100, Irvine, California 92618. SkyBell is the assignee and owner of the Patents-in-Suit.

6. On information and belief, Ring is a corporation duly organized and existing under the laws of Delaware, having its principal place of business at 1523 26th Street, Santa Monica, California 90404.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Ring because, inter alia, upon information and belief, (i) Ring has its principal place of business in Santa Monica, California; (ii) Ring has done and continues to do business in California; and (iii) Ring has committed and continues to commit acts of patent infringement in the State of California, including by making, using, offering to sell, and/or selling accused products and services in California, and/or inducing others to commit acts of patent infringement in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because, inter alia, upon information and belief, (i) Ring has its principal place of business in Santa Monica, California; (ii) Ring has done and continues to do business in California; and (iii) Ring has committed and continues to commit acts of patent infringement in the State of California, including by making, using, offering to sell, and/or selling accused products and services in California, and/or inducing others to commit acts of patent infringement in this District.

## SKYBELL'S INNOVATIONS

10. In 2013, Joseph Scalisi, Desiree Mejia and Andrew Thomas founded Skybell, which was then called iDoorCam. At the time, Mr. Scalisi was working in

a business so small it lacked the means for a receptionist—whoever sat closest to the door was forced to jump up to answer knocks from visitors, solicitors, and others. Mr. Scalisi devised a novel solution to the problem: a video doorbell that displayed every visitor on the screen of your smartphone. Realizing he was onto something, Mr. Scalisi contacted friends to help design and engineer his vision.

11. By September 2013, SkyBell successfully prototyped its video doorbell. By that time, SkyBell had launched an extremely successful crowd-sourcing campaign, raising approximately $600,000 for its device on the website Indiegogo (plus another $300,000 in sales from the SkyBell website).

12. In January 2014, buoyed by the success of the Indiegogo campaign, SkyBell introduced its first video doorbell product to the market. Since that time, SkyBell has released four versions of its signature round video doorbell, as well as two thinner models (the SkyBell Slim and SkyBell Trim Plus):



13. SkyBell markets directly to consumers, but it has thrived primarily by entering into major industry partnerships. SkyBell is the video doorbell of choice for such large-scale providers as Honeywell and Alarm.com.

14. SkyBell has consistently attracted praise from the industry press for the quality of its products. Wirecutter, a New York Times publication, declared SkyBell the "best doorbell camera" in an October 4, 2017, article—beating Ring and every other competitor.[1] Similarly, in a November 5, 2017 article, a CNET

---

[1] *The Best Smart Doorbell Camera*, Wirecutter, *available at*

1  reviewer called the SkyBell doorbell her "favorite" among all the competitors in the
2  market (including Ring).[2] And on December 6, 2016, Entrepreneur labeled SkyBell
3  as the "best video doorbell available."[3]

4      15.    SkyBell has achieved this success in part through its commitment to innovation, research and development. SkyBell has secured 71 U.S. patents, with many more pending. It also has an extensive portfolio of foreign patents. SkyBell believes it has more patents specifically relating to video doorbells than any competitor in the industry. Indeed, a study recently named Mr. Scalisi, one of the named inventors on the Patents-in-Suit, among the 250 most prolific inventors of "Internet of Things" technologies.

### PATENTS-IN-SUIT

    16.    On June 9, 2015, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,055,202 (the "'202 Patent"), entitled "Doorbell Communication Systems and Methods." A true and correct copy of the '202 Patent is attached hereto as Exhibit A.

    17.    All rights, title, and interest in the '202 Patent have been assigned to Skybell, the sole owner of the '202 Patent. Skybell has been the sole owner of the '202 Patent since its issuance.

    18.    The '202 Patent is generally directed towards doorbells that can detect visitors using a visitor detection system including a camera assembly, a motion detector assembly, or an infrared detector assembly. The '202 Patent describes a visitor detection system with multiple sensors to detect indications suggestive of a visitor with a wall separating the sensors to divide the field of view of the visitor

---

(… cont'd)
https://thewirecutter.com/reviews/best-smart-doorbell-camera/.
[2] *7 smart doorbells that make screening visitors oh-so easy*, CNET, *available at* https://www.cnet.com/news/you-wont-have-to-guess-whos-coming-to-dinner-with-these-smart-doorbells/.
[3] *Top 25 Tech Gadgets to Give This Holiday Season*, Entrepreneur, *available at* https://www.entrepreneur.com/article/286054.

4

detection system, such that different sensors are configured to detect the indications suggestive of a visitor in different portions of the field of view.

19. On November 3, 2015, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,179,109 (the "'109 Patent"), entitled "Doorbell Communication Systems and Methods." A true and correct copy of the '109 Patent is attached hereto as Exhibit B.

20. All rights, title, and interest in the '109 Patent have been assigned to Skybell, the sole owner of the '109 Patent. Skybell has been the sole owner of the '109 Patent since its issuance.

21. The '109 Patent is generally directed toward doorbell systems comprising a doorbell with a camera and a remote computing device, where the two communicate with each other such that an application on a remote computing device can cause the doorbell camera to exit its sleep mode and record a video that is sent to the remote computing device.

22. On November 3, 2015, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,179,107 (the "'107 Patent"), entitled "Doorbell Chime Systems and Methods." A true and correct copy of the '107 Patent is attached hereto as Exhibit C.

23. All rights, title, and interest in the '107 Patent have been assigned to Skybell, the sole owner of the '107 Patent. Skybell has been the sole owner of the '107 Patent since its issuance.

24. The '107 Patent is generally directed towards configuring the remote doorbell chime sound by selecting the sound on a phone or tablet device and then sending a data file to the chime.

**RING AND ITS PRODUCTS**

25. On information and belief, Ring was founded in 2011, originally doing business under the name "DoorBot." In September 2013, DoorBot unsuccessfully appeared on the television program Shark Tank, failing to secure any funding. It

leveraged the ensuing publicity into additional sales, however, and later rebranded itself as "Ring."

26. After its Shark Tank appearance, Ring has continued to pursue the same strategy: attract sales by advertising and marketing, without necessarily providing any technical innovation. Indeed, although Ring may claim to be a leader in video doorbell technology, the numbers tell a different story. On information and believe, Ring has obtained only 3 U.S. patents.

27. Upon information and belief, including based on Ring's services and products identified on Ring's website and in its mobile application, Ring makes, uses, offers to sell, and/or sells in the United States, and/or import into the United States, products and services that practice the inventions disclosed in the Patents-in-Suit, including, but not limited to, Ring's video doorbells (the "Ring Hardware") and the mobile Ring application (the "Ring App").

28. The Ring Hardware includes Ring Video Doorbell, Ring Video Doorbell 2, Ring Video Doorbell Pro, and Ring Video Doorbell Elite.

   

Video Doorbell — Video Doorbell 2 — Video Doorbell Pro — Video Doorbell Elite

29. The Ring Hardware includes an accessory doorbell chime—Ring Chime and Ring Chime Pro.

30. In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, upon information and belief, Ring indirectly infringes the Asserted Patents because it actively and knowingly directs, causes, induces, and encourages others, including, but not limited to, its software developers, customers, advertisers, end users, and app users to make, use, sell, and/or offer to sell in the United States, and/or import into the

1  United States, application products and services that practice the inventions
2  disclosed in the Patents-in-Suit, including, but not limited to, the Ring Hardware
3  and the Ring App, by, among other things, providing instructions and technical
4  assistance relating to the installation, download, set up, use, operation, and
5  maintenance of said Ring Hardware and Ring App.

## NOTICE OF INFRINGEMENT

7  31.  Ring has had notice of the Patents-in-Suit. For example, on May 30,
8  2016, Mr. Scalisi, Skybell's CEO, sent an email message to Ring's founder Jamie
9  Siminoff. Mr. Scalisi's email signature includes a link to a webpage outlining
10 SkyBell's patent portfolio. On June 1, 2016, Mr. Siminoff answered that email and
11 specifically addressed Mr. Scalisi's patent portfolio link in his response.

12 32.  On information and belief, Ring is acutely aware of the important
13 intellectual property in the video doorbell industry. For example, in the summer of
14 2016, executives at SkyBell met with Mr. Siminoff and discussed who held key
15 patent rights to video doorbells. As such, it is highly likely that Ring has
16 investigated SkyBell's patent portfolio and understands SkyBell's intellectual
17 property position.

18 33.  In addition, as mentioned above, Ring has very few issued U.S.
19 patents. One patent that it does own (and which is clearly invalid), is U.S. Patent
20 No. 9,819,713 (the '713 Patent). Mr. Siminoff is a purported co-inventor of the
21 '713 Patent. The '713 Patent lists numerous SkyBell patents in its recitation of the
22 prior art, including the '202, '109, and '107 patents. Accordingly, Ring had further
23 notice of SkyBell's patents as a result of Ring's own patent practice.

24 34.  In the alternative, Defendant has notice of the Patents-in-Suit at least
25 as of the date of this Complaint.

# COUNT I

## (INFRINGEMENT OF THE '202 PATENT)

35. SkyBell incorporates the preceding paragraphs as if fully set forth herein.

36. Ring infringes the '202 Patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, Ring Hardware and Ring Apps that meet the elements of the asserted claims.

37. By way of a non-limiting example, the Ring Doorbell practices the inventions disclosed in the '202 Patent because it has a visitor detection system with three infrared motion sensors, each responsible for detecting indications suggestive of a visitor in three different portions of the field of view, as illustrated on Ring's website:[4]



The Ring Doorbell's visitor detection system has a wall that separates the three sensors to divide the field of view so that each sensor detects indications suggestive of a visitor in different portions of the field of view:



---

[4] https://support.ring.com/hc/en-us/articles/204366534-Utilizing-Motion-Detection-with-your-Ring-Video-Doorbell-or-Stick-Up-Cam.



38. Upon information and belief, Ring has infringed at least claims 1, 4, 5, 7, 8, 18, and 19 of the '202 Patent, pursuant to 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Ring Hardware and the Ring App. Upon information and belief, Ring's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

39. Upon information and belief, since having notice of the '202 Patent, Ring has induced infringement of at least claims 1, 18, and 19 of the '202 Patent pursuant to 35 U.S.C. § 271(b) by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its software developers, customers, advertisers, end users, and app users to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, products and services that practice the inventions disclosed in the '202 Patent, by, among other things, providing instructions and technical assistance relating to the installation, download, set up, use, operation, and maintenance of the Ring Hardware and Ring App.

40. In one example, Ring has induced infringement of the above-identified claims by providing its software developers, customers, advertisers, end users, and app users with the Ring Hardware and Ring App, knowing and/or intending that, when used as intended, the Ring Hardware and/or Ring App meet the elements of the asserted claims. In another example, Ring has induced infringement of the above-identified claims of the '202 Patent by knowingly and/or willfully providing instructions and technical assistance that explain, instruct, direct, cause, and encourage its software developers, customers, advertisers, end users, and app users

to download or install the Ring App from a mobile application store and to run and use the Ring App, thereby activating its infringing functionalities.

41. Ring committed the foregoing infringing activities without license from SkyBell and with notice of the '202 Patent.

42. Ring knew the '202 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '202 Patent. Accordingly, SkyBell's damages should be trebled pursuant to 35 U.S.C. § 284 because of Ring's willful infringement of the '739 Patent.

43. The acts of infringement by Ring have been with the knowledge of the '202 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling SkyBell to its reasonable attorney's fees and litigation expenses.

44. The acts of infringement by Ring will continue unless enjoined by this Court.

45. SkyBell has been and will continue to be irreparably harmed and damaged by Ring's infringement of the '202 Patent and has no adequate remedy at law.

**COUNT II**

**(INFRINGEMENT OF THE '109 PATENT)**

46. SkyBell incorporates the preceding paragraphs as if fully set forth herein.

47. Ring infringes the '109 Patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, Ring Hardware and Ring Apps that meet the elements of the asserted claims. By way of a non-limiting example, the Ring Doorbell with the Ring app practices the inventions disclosed in the '109 Patent because the Ring app has a "Live View" feature, which provides on-demand access to the doorbell camera to record a live video feed. This enables a user of the device to override or exit the sleep power

setting of the doorbell, and to enter a recording mode, as described on Ring's website:[5]

**Accessing Live View**

- On the "My Devices" screen under your Location, select the device from which you want to access Live View.
- Tap the "Live View" button to watch a live video stream from your device.

48. Ring has infringed at least claims 1, 7, 15, and 20 of the '109 Patent, pursuant to 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Ring Hardware and the Ring App. Ring's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

49. Upon information and belief, since having notice of the '109 Patent, Ring has induced infringement of at least claims 1, 7, 15, and 20 of the '109 Patent pursuant to 35 U.S.C. § 271(b) by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its software developers, customers, advertisers, end users, and app users to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, products and services that practice the inventions disclosed in the '109 Patent, by, among other things, providing instructions and technical assistance relating to the installation, download, set up, use, operation, and maintenance of the Ring Hardware and Ring App.

50. In one example, Ring has induced infringement of the above-identified claims by providing its software developers, customers, advertisers, end users, and app users with the Ring Hardware and Ring App, knowing and/or intending that, when used as intended, the Ring Hardware and/or Ring App meet the elements of the asserted claims. In another example, Ring has induced infringement of the above-identified claims of the '109 Patent by knowingly and/or willfully providing instructions and technical assistance that explain, instruct, direct, cause, and

---

[5] https://support.ring.com/hc/en-us/articles/208144516-Using-Live-View.

1  encourage its software developers, customers, advertisers, end users, and app users
2  to download or install the Ring App from a mobile application store and to run and
3  use the Ring App, thereby activating its infringing functionalities.

4        51.   Ring committed the foregoing infringing activities without license
5  from SkyBell and with notice of the '109 Patent.

6        52.   Ring knew the '109 Patent existed while committing the foregoing
7  infringing acts, thereby willfully, wantonly, and deliberately infringing the '109
8  Patent. Accordingly, SkyBell's damages should be trebled pursuant to 35 U.S.C. §
9  284 because of Ring's willful infringement of the '739 Patent.

10       53.   The acts of infringement by Ring have been with the knowledge of the
11 '109 Patent and are willful, wanton, and deliberate, thus rendering this action
12 "exceptional" within the meaning of 35 U.S.C. § 285 and entitling SkyBell to its
13 reasonable attorney's fees and litigation expenses.

14       54.   The acts of infringement by Ring will continue unless enjoined by this
15 Court.

16       55.   SkyBell has been and will continue to be irreparably harmed and
17 damaged by Ring's infringement of the '109 Patent and has no adequate remedy at
18 law.

### COUNT III
### (INFRINGEMENT OF THE '107 PATENT)

21       56.   SkyBell incorporates the preceding paragraphs as if fully set forth
22 herein.

23       57.   Ring infringes the '107 Patent by making, using, selling, and/or
24 offering for sale in the United States, and/or importing into the United States, Ring
25 Hardware and Ring Apps that meet the elements of the asserted claims. By way of
26 a non-limiting example, the Ring Doorbell with a Chime accessory practices the
27 inventions disclosed in the '107 Patent because the Ring App allows for selection
28

of a chime sound and then uploading a sound file to the remotely located Chime, as described on Ring's website:[6]

**Downloading Your New Tones**

After saving your selected ringtones, you'll see the blue light on your Chime begin to flash; this means it's downloading. Once the light turns solid blue, the download is done, and you're ready to use the new tones.

**Note:** It may take a few minutes for your Chime to download the new tones.

58. Ring has infringed at least claims 12 and 18 of the '107 Patent, pursuant to 35 U.S.C. § 271(a), by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Ring Hardware and the Ring App. Ring's infringement pursuant to 35 U.S.C. § 271(a) is ongoing.

59. Upon information and belief, since having notice of the '107 Patent, Ring has induced infringement of at least claims 12 and 18 of the '107 Patent pursuant to 35 U.S.C. § 271(b) by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its software developers, customers, advertisers, end users, and app users to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, products and services that practice the inventions disclosed in the '107 Patent, by, among other things, providing instructions and technical assistance relating to the installation, download, set up, use, operation, and maintenance of the Ring Hardware and Ring App.

60. In one example, Ring has induced infringement of the above-identified claims by providing its software developers, customers, advertisers, end users, and app users with the Ring Hardware and Ring App, knowing and/or intending that, when used as intended, the Ring Hardware and/or Ring App meet the elements of the asserted claims. In another example, Ring has induced infringement of the above-identified claims of the '107 Patent by knowingly and/or willfully providing instructions and technical assistance that explain, instruct, direct, cause, and encourage its software developers, customers, advertisers, end users, and app users

---

[6] https://support.ring.com/hc/en-us/articles/214363386-Multiple-Ringtones.

to download or install the Ring App from a mobile application store and to run and use the Ring App, thereby activating its infringing functionalities.

61. Ring committed the foregoing infringing activities without license from SkyBell and with notice of the '107 Patent.

62. Ring knew the '107 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly, and deliberately infringing the '107 Patent. Accordingly, SkyBell's damages should be trebled pursuant to 35 U.S.C. § 284 because of Ring's willful infringement of the '739 Patent.

63. The acts of infringement by Ring have been with the knowledge of the '107 Patent and are willful, wanton, and deliberate, thus rendering this action "exceptional" within the meaning of 35 U.S.C. § 285 and entitling SkyBell to its reasonable attorney's fees and litigation expenses.

64. The acts of infringement by Ring will continue unless enjoined by this Court.

65. SkyBell has been and will continue to be irreparably harmed and damaged by Ring's infringement of the '107 Patent and has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SkyBell prays for judgment in its favor and against Defendant Ring and specifically for the following relief:

(a) Entry of judgment in favor of SkyBell and against Ring on all counts;

(b) Entry of judgment that Ring has infringed the Patents-in-Suit;

(c) Entry of judgment that Ring's infringement of the Patents-in-Suit has been willful;

(d) An order permanently enjoining Ring, together with its officers, directors, agents, servants, employees, those acting in privity with them, and upon those persons in active concert or participation with them, from infringing the Patents-in-Suit;

(e) An award of compensatory damages adequate to compensate SkyBell for Ring's infringement of the Patents-in-Suit, in no event less than a reasonable royalty, in an amount according to proof and trebled as a result of willful infringement as provided by 35 U.S.C. § 284;

(f) An award of reasonable fees for expert witnesses and attorneys pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

(g) Pre-judgment and post-judgment interest on SkyBell's award, in an amount according to proof;

(h) SkyBell's costs; and

(i) All such other and further costs and relief as the Court deems just and proper.

Dated: January 5, 2018

OLEG ELKHUNOVICH
JOSEPH S. GRINSTEIN (*PHV to be filed*)
JACOB W. BUCHDAHL (*PHV to be filed*)
SUSMAN GODFREY L.L.P.

By: _/s/ O. Elkhunovich_
Oleg Elkhunovich
Attorneys for Plaintiff Skybell Technologies, Inc.

**DEMAND FOR JURY TRIAL**

Skybell demands a trial by jury on all issues triable in this action pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: January 5, 2018

OLEG ELKHUNOVICH
JOSEPH S. GRINSTEIN (*PHV to be filed*)
JACOB W. BUCHDAHL (*PHV to be filed*)
SUSMAN GODFREY L.L.P.

By: _____
Oleg Elkhunovich
Attorneys for Plaintiff Skybell Technologies, Inc.