1  DURIE TANGRI LLP
   CLEMENT S. ROBERTS (SBN 209203)
2  croberts@durietangri.com
   LAURA E. MILLER (SBN 271713)
3  lmiller@durietangri.com
   JOSHUA D. FURMAN (SBN 312641)
4  jfurman@durietangri.com
   217 Leidesdorff Street
5  San Francisco, CA  94111
   Telephone:  415-362-6666
6  Facsimile:   415-236-6300

7  Attorneys for Defendant
   RING INC.

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      SOUTHERN DIVISION

12  SKYBELL TECHNOLOGIES, INC.,        Case No. 8:18-cv-00014-JVS-JDE

13                      Plaintiff,     **DEFENDANT RING INC.'S ANSWER,
                                       DEFENSES, AND COUNTERCLAIMS**
14       v.                            **TO PLAINTIFF SKYBELL
                                       TECHNLOGIES, INC.'S AMENDED**
15  RING INC.,                         **COMPLAINT FOR PATENT
                                       INFRINGEMENT**
16                      Defendant.
                                       Ctrm:  10C
17                                     Judge: Honorable James V. Selna

18

19

20

21

22

23

24

25

26

27

28

Defendant Ring Inc. ("Ring"), by and through its undersigned counsel, files this Answer, Defenses, and Counterclaims to Plaintiff Skybell Technologies, Inc.'s ("Skybell") First Amended Complaint for Patent Infringement ("Amended Complaint"):

## INTRODUCTION

1.      Ring admits that Ring and Skybell are companies in the video doorbell market.  Ring denies that SkyBell is the technological and intellectual market leader.  Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1 of the Amended Complaint, and on that basis denies them.

2.      Ring denies the allegations in paragraph 2 of the Amended Complaint.

3.      Ring admits that it has a right to compete with Skybell but denies that it competes via hype and/or does not compete through innovation.  Ring also denies Skybell's allegations of patent infringement and its (implicit) allegation that Ring competes by "theft."  Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 of the Amended Complaint, and on that basis denies them.

## NATURE OF THE ACTION

4.      Ring admits that this action purports to be one for patent infringement against Ring arising under Title 35 of the United States Code.  Ring admits that Skybell purports to assert U.S. Patent Nos. 9,055,202; 9,179,109; 9,179,107; 9,743,049; and 9,160,987 against Ring.

## THE PARTIES

5.      Ring is informed and believes that SkyBell is a Nevada corporation with a principal place of business at 1 Jenner #100, Irvine, California, 92618.  Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of the Amended Complaint, and on that basis denies them.

6.      Ring admits it is a Delaware corporation and this its principal place of business is at 1523 26th Street, Santa Monica, California 90404.

**JURISDICTION AND VENUE**

7.      Ring admits that this Court has subject matter jurisdiction over this action.

8.      For the purposes of this action, Ring admits that this Court has personal jurisdiction over Ring with respect to the asserted claims.  Ring admits that Ring's principal place of business is in Santa Monica, California, and that Ring has done and continues to do business in California.  Ring denies the remaining allegations in paragraph 8 of the Amended Complaint.

9.      Ring admits that the venue is proper in this Court for this action.  Ring admits that Ring's principal place of business is in Santa Monica, California, and that Ring has done and continues to do business in California.  Ring denies the remaining allegations in paragraph 9 of the Amended Complaint.

**SKYBELL'S ALLEGED INNOVATIONS**

10.     Ring admits that Skybell was previously called iDoorCam.  Ring denies that Mr. Scalisi developed a novel solution to any problem.  Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of the Amended Complaint, and on that basis denies them.

11.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Amended Complaint, and on that basis denies them.

12.     Ring admits that SkyBell has released video doorbells and that those doorbells include the Skybell HD, SkyBell Trim Plus, SkyBell Slim, and SkyBell Trim Plus.  Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of the Amended Complaint, and on that basis denies them.

13.     Ring admits that Skybell markets directly to consumers.  Ring is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 13 of the Amended Complaint, and on that basis denies them.

///

14.     Ring admits that the cited news articles discuss Skybell products, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 of the Amended Complaint, and on that basis denies them.

15.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Amended Complaint and on that basis denies them.

## PATENTS-IN-SUIT

16.     Ring admits that paragraph 16 of the Amended Complaint accurately states the title and issue date that appear on the face of U.S. Patent No. 9,055,202 ("the '202 patent"), and that Exhibit A of the Amended Complaint appears to be a copy of the '202 patent.  Ring denies the remaining allegations of paragraph 16 of the Amended Complaint.

17.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Amended Complaint, and on that basis denies them.

18.     Ring admits that the abstract of the '202 patent states:

> Doorbells can detect visitors using a visitor detection system that includes a camera assembly, a motion detector assembly, or an infrared detector assembly.  The visitor detection system can have a first sensor configured to detect a first indication suggestive of a visitor and a second sensor configured to detect a second indication suggestive of a visitor.  A wall can separate the first sensor from the second sensor to divide the field of view of the visitor detection system such that the first sensor is configured to detect the first indication within a first portion of the field of view and the second sensor is configured to detect the second indication within a second portion of the field of view.

The remaining allegations in this paragraph are not factual allegations and therefore no response is required.  However, to the extent a response is required, Ring is without

///

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 of the Amended Complaint, and on that basis denies them.

19.     Ring admits that paragraph 19 of the Amended Complaint accurately states the title and issue date that appear on the face of U.S. Patent No. 9,179,109 ("the '109 patent"), and that Exhibit B of the Amended Complaint appears to be a copy of the '109 patent.  Ring denies the remaining allegations of paragraph 19 of the Amended Complaint.

20.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Amended Complaint, and on that basis denies them.

21.     Ring admits that the abstract of the '109 patent states:

> A doorbell system can include a remote computing device and a
> doorbell that has a camera. The doorbell can enter a camera
> sleep mode wherein the camera is configured not to record. The
> remote computing device can be used to override a power
> setting of the doorbell to enable the doorbell to record a video.
> Then, the remote computing device can receive the video that
> was recorded by the doorbell.

The remaining allegations in this paragraph are not factual allegations and therefore no response is required.  However, to the extent a response is required, Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 of the Amended Complaint, and on that basis denies them.

22.     Ring admits that paragraph 22 of the Amended Complaint accurately states the title and issue date that appear on the face of U.S. Patent No. 9,179,107 ("the '107 patent"), and that Exhibit C of the Amended Complaint appears to be a copy of the '107 patent.  Ring denies the remaining allegations of paragraph 22 of the Amended Complaint.

23.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Amended Complaint, and on that basis denies them.

4

24.     Ring admits that the abstract of the '107 patent states:

> Doorbell systems can include a doorbell, a chime, and a remote computing device.  In some embodiments, the remote computing device can select a sound.  A data file comprising information that represents the sound can be sent to the doorbell that is communicatively coupled to the remote computing device.  The doorbell can send the data file to the chime that is communicatively coupled to the doorbell and remotely located with respect to the doorbell.

The remaining allegations in this paragraph are not factual allegations and therefore no response is required.  However, to the extent a response is required, Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of the Amended Complaint, and on that basis denies them.

25.     Ring admits that paragraph 25 of the Amended Complaint accurately states the title and issue date that appear on the face of U.S. Patent No. 9,743,049 ("the '049 patent"), and that Exhibit D of the Amended Complaint appears to be a copy of the '049 patent.  Ring denies the remaining allegations of paragraph 25 of the Amended Complaint.

26.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Amended Complaint, and on that basis denies them.

27.     Ring admits that the abstract of the '049 patent states:

> A doorbell system can include a remote computing device and a doorbell that has a camera. The doorbell can receive a communication from a remote sensor in response to an event. The communication may cause a power setting of the doorbell to be overridden.

The remaining allegations in this paragraph are not factual allegations and therefore no response is required.  However, to the extent a response is required, Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27 of the Amended Complaint, and on that basis denies them.

///

28.     Ring admits that paragraph 28 of the Amended Complaint accurately states the title and issue date that appear on the face of U.S. Patent No. 9,160,987 ("the '987 patent"), and that Exhibit E of the Amended Complaint appears to be a copy of the '987 patent.  Ring denies the remaining allegations of paragraph 28 of the Amended Complaint.

29.     Ring is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Amended Complaint, and on that basis denies them.

30.     Ring admits that the abstract of the '987 patent states:

> Doorbell systems can include a doorbell and a chime. In some embodiments, the chime can be communicatively coupled to a wireless network of a building, to the doorbell, and to a remote computing device.

The remaining allegations in this paragraph are not factual allegations and therefore no response is required.  However, to the extent a response is required, Ring is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 of the Amended Complaint, and on that basis denies them.

## RING AND ITS PRODUCTS

31.     Ring admits that it was founded in 2011, and that it originally did business as "DoorBot."  Ring further admits that Mr. Siminoff appeared on the television show Shark Tank, that he did not receive funding during that appearance, that Ring benefited from its exposure on that television program, and that it currently does business as Ring.  Ring denies the remaining allegations in paragraph 31 of the Amended Complaint.

32.     Ring denies the allegations in paragraph 32 of the Amended Complaint.

33.     Ring denies the allegations in paragraph 33 of the Amended Complaint.

34.     Ring admits that Skybell purports to allege that the following Ring products infringe the Patents-in-Suit: Video Doorbell, Video Doorbell 2, Video Doorbell Pro, and Video Doorbell Elite.

///

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE

35.     Ring admits that Skybell purports to allege that the Ring Chime and Ring Chime Pro infringe the Patents-in-Suit.

36.     Ring denies the allegations in paragraph 36 of the Amended Complaint.

## NOTICE OF INFRINGEMENT

37.     Ring admits that Joe Scalisi sent an email to Jamie Siminoff on May 30, 2016.  Ring further admits that Mr. Scalisi's form email signature included a link to a Skybell website purporting to list Skybell's patents.  Ring further admits that Mr. Siminoff responded to Mr. Scalisi's email on June 1, 2016, and referenced the website link in Mr. Scalisi's form signature.  Ring lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 37 and, on that basis denies them.

38.     Ring admits that Skybell executives met with Mr. Siminoff in the summer of 2016, and the parties discussed patent rights to video doorbell technology.  Ring denies the remaining allegations in paragraph 38 of the Amended Complaint.

39.     Ring admits that it owns U.S. Patent No. 9,819,713 ("the '713 patent").  Ring further admits that Mr. Siminoff is a co-inventor of the '713 patent.  Ring further admits that the '713 patent cites the '202, '109, '107, and '987 patents in the "References Cited" section.  Ring denies the remaining allegations of paragraph 39 of the Amended Complaint.

40.     Ring admits that it had notice of the '202, '109, and '107 patents as of the date of service of the Original Complaint.  Ring admits that it had notice of the '049 and '987 patents as of the date of service of the Amended Complaint.  Ring denies the remaining allegations of paragraph 40 of the Amended Complaint.

## COUNT I
## (INFRINGEMENT OF THE '202 PATENT)

41.     Ring incorporates by reference its responses to paragraphs 1–40 above.

42.     Ring denies the allegations in paragraph 42 of the Amended Complaint.

43.     Ring denies the allegations in paragraph 43 of the Amended Complaint.

44.   Ring denies the allegations in paragraph 44 of the Amended Complaint.

45.   Ring denies the allegations in paragraph 45 of the Amended Complaint.

46.   Ring denies the allegations in paragraph 46 of the Amended Complaint.

47.   Ring denies the allegations in paragraph 47 of the Amended Complaint.

48.   Ring denies the allegations in paragraph 48 of the Amended Complaint.

49.   Ring denies the allegations in paragraph 49 of the Amended Complaint.

50.   Ring denies the allegations in paragraph 50 of the Amended Complaint.

51.   Ring denies the allegations in paragraph 51 of the Amended Complaint.

## <u>COUNT II</u>

## <u>(INFRINGEMENT OF THE '109 PATENT)</u>

52.   Ring incorporates its responses to paragraphs 1–51 above.

53.   Ring denies the allegations in paragraph 53 of the Amended Complaint.

54.   Ring denies the allegations in paragraph 54 of the Amended Complaint.

55.   Ring denies the allegations in paragraph 55 of the Amended Complaint.

56.   Ring denies the allegations in paragraph 56 of the Amended Complaint.

57.   Ring denies the allegations in paragraph 57 of the Amended Complaint.

58.   Ring denies the allegations in paragraph 58 of the Amended Complaint.

59.   Ring denies the allegations in paragraph 59 of the Amended Complaint.

60.   Ring denies the allegations in paragraph 60 of the Amended Complaint.

61.   Ring denies the allegations in paragraph 61 of the Amended Complaint.

## <u>COUNT III</u>

## <u>(INFRINGEMENT OF THE '107 PATENT)</u>

62.   Ring incorporates its answers to the paragraphs 1–61 above.

63.   Ring denies the allegations in paragraph 63 of the Amended Complaint.

64.   Ring denies the allegations in paragraph 64 of the Amended Complaint.

65.   Ring denies the allegations in paragraph 65 of the Amended Complaint.

66.   Ring denies the allegations in paragraph 66 of the Amended Complaint.

67.   Ring denies the allegations in paragraph 67 of the Amended Complaint.

68.   Ring denies the allegations in paragraph 68 of the Amended Complaint.

69.   Ring denies the allegations in paragraph 69 of the Amended Complaint.

70.   Ring denies the allegations in paragraph 70 of the Amended Complaint.

## COUNT IV

## (INFRINGEMENT OF THE '049 PATENT)

71.   Ring incorporates its responses to paragraphs 1–70 above.

72.   Ring denies the allegations in paragraph 72 of the Amended Complaint.

73.   Ring denies the allegations in paragraph 73 of the Amended Complaint.

74.   Ring denies the allegations in paragraph 74 of the Amended Complaint.

75.   Ring denies the allegations in paragraph 75 of the Amended Complaint.

76.   Ring denies the allegations in paragraph 76 of the Amended Complaint.

77.   Ring denies the allegations in paragraph 77 of the Amended Complaint.

78.   Ring denies the allegations in paragraph 78 of the Amended Complaint.

79.   Ring denies the allegations in paragraph 79 of the Amended Complaint.

80.   Ring denies the allegations in paragraph 80 of the Amended Complaint.

## COUNT V

## (INFRINGEMENT OF THE '987 PATENT)

81.   Ring incorporates its responses to paragraphs 1–80 above.

82.   Ring denies the allegations in paragraph 82 of the Amended Complaint.

83.   Ring denies the allegations in paragraph 83 of the Amended Complaint.

84.   Ring admits that the Ring Video Doorbell Pro allows users to receive alerts through the Ring App when a visitor presses the doorbell button.  Ring denies the remaining allegations in paragraph 84 of the Amended Complaint.

85.   Ring denies the allegations in paragraph 85 of the Amended Complaint.

86.   Ring denies the allegations in paragraph 86 of the Amended Complaint.

87.   Ring denies the allegations in paragraph 87 of the Amended Complaint.

88.   Ring denies the allegations in paragraph 88 of the Amended Complaint.

89.   Ring denies the allegations in paragraph 89 of the Amended Complaint.

9

90.     Ring denies the allegations in paragraph 90 of the Amended Complaint.

91.     Ring denies the allegations in paragraph 91 of the Amended Complaint.

92.     Ring denies the allegations in paragraph 92 of the Amended Complaint.

## SKYBELL'S PRAYER FOR RELIEF

Ring denies that Skybell is entitled to any of the relief it requests.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Invalidity)

93.     Ring incorporates its responses to paragraphs 1–92 above.

94.     The claims of the Patents-In-Suit are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. §§ 101 et seq., including 101, 102, 103, 112, and/or 116.

## SECOND AFFIRMATIVE DEFENSE

### (Non-Infringement)

95.     Ring incorporates its responses to paragraphs 1–94 above.

96.     Ring has not infringed and does not infringe directly, jointly, contributorily, literally, by the doctrine of equivalents, or by inducement, any valid and enforceable claim of the Patents-in-Suit.  At a minimum, the accused acts and instrumentalities do not include all of the limitations of the identified claims of the Patents-in-Suit.

## THIRD AFFIRMATIVE DEFENSE

### (Equitable Defenses)

97.     Ring incorporates its responses to paragraphs 1–96 above.

98.     Skybell's claims are also barred by the doctrines of estoppel and/or waiver to the extent Skybell interprets the claims of the patents-in-suit to cover claim scope that extends beyond or is inconsistent with statements, amendments, or positions made during prosecution of the Patents-in-Suit.  Skybell is estopped from construing one or more claims of the Patents-in-Suit to cover and include any product, service, or activity of Ring and/or is prevented from asserting infringement under the doctrine of equivalents, and is

further estopped from construing one or more claims of the Patents-in-Suit to claim scope ceded during the prosecution of the Patents-in-Suit in order to, for example, avoid prior art.  Ring's investigation is ongoing and may reveal additional facts supporting equitable doctrines that bar Ring's claims.

## FOURTH AFFIRMATIVE DEFENSE

### (Limitations on Damages)

99.    Ring incorporates its responses to paragraph 1–98 above.

100.    Skybell's right to seek damages and other remedies from Ring is limited by 15 U.S.C. §§ 286, 287, and 288.

## FIFTH AFFIRMATIVE DEFENSE

### (No Right to Injunctive Relief)

101.    Ring incorporates its responses to paragraphs 1–100 above.

102.    Skybell is not entitled to injunctive relief at least because:  (1) Skybell has not suffered nor will it suffer irreparable harm as a result of Ring's conduct; (2) any harm suffered by Skybell if an injunction were not granted would be outweighed by harm to Ring if an injunction were granted; (3) Skybell would have an adequate remedy at law if it were to prevail on the merits in this action; and (4) the public interest would not be served by an injunction.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

103.    Ring incorporates its responses to paragraphs 1–102 above.

104.    Skybell's Amended Complaint fails to state facts sufficient to constitute a claim upon with relief can be granted.

## COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff Ring counterclaims against Plaintiff and Counterclaim-Defendant Skybell as follows:

///

///

## THE PARTIES

105.   Ring is a Delaware limited liability company with its principal place of business in Santa Monica, California.

106.   On information and belief, Skybell is a Nevada company having its principal place of business at 1 Jenner #100, Irvine, California 92618.

## JURISDICTION AND VENUE

107.   This Court has original subject matter jurisdiction over the patent non-infringement counterclaim described herein (Count 4) under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

108.   This Court has original subject matter jurisdiction over the Lanham Act counterclaims described herein (Count 1) under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

109.   This Court has supplemental jurisdiction over the California Unfair Competition and False Advertising counterclaims described herein (Counts 2–3) under 28 U.S.C. § 1367.

110.   This Court has personal jurisdiction over Skybell because, among other things, upon information and belief, (i) Skybell has its principal place of business in California, (ii) Skybell does and continues to do business in California, and (iii) filed suit against Ring in this District alleging infringement of the Patents-in-Suit.

111.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because, among other reasons, this is Skybell's home district and because Skybell has consented to the propriety of venue in this Court by filing its claims for patent infringement against Ring in this Court, in response to which these counterclaims are asserted.  Further, a substantial portion of the events giving rise to the counterclaims alleged herein occurred in the District, including the development of the accused instrumentalities and Skybell's false advertising and unfair competition violations.

///

///

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE

# FACTUAL BACKGROUND

112.   For years, Skybell has manufactured, distributed, marketed, and/or sold its products labeled as "Made in USA" and has spoken publicly about how important it is to Skybell's identity and business ethics that its products are made in the United States. However, while Skybell has publicly labeled and touted its products as "Made in the USA," the reality is that Skybell's products are, at a minimum, largely made out of foreign-made components.  As a result Skybell has been violating numerous laws.

## *Skybell Advertises Its Products as "Made in the USA"*

113.   Skybell's products have been sold throughout California, both in retail stores and online.  Skybell's products include the Skybell (sometimes referred to "Skybell 1.0"),[1] Skybell 2.0,[2] Skybell HD,[3] Skybell Trim Plus,[4] Skybell Accessories,[5] the Skybell App,[6] Skybell Connect,[7] and associated services hereinafter collectively referred to the "Skybell Products."

114.   Skybell prominently advertises the Skybell Products as being made in the United States, using unqualified marks including "Made in USA," "Made in the USA," and images of the American flag.

115.   For example, the outer packaging of the Skybell HD (shown below) includes an American flag with the words "Made in USA."

---

[1] http://www.skybell.com/support/support-v1/.
[2] http://www.skybell.com/support/support-v2/.
[3] http://www.skybell.com/support/support-hd/, http://www.skybell.com/product/skybell-video-doorbell-hd/.
[4] http://www.skybell.com/product/skybell-video-doorbell-trim-plus/.
[5] http://www.skybell.com/products/accessories/.
[6] http://www.skybell.com/free-app/.
[7] http://www.skybell.com/skybell-connect/.

13



116.   The Skybell HD is also marked with the phrase "Made in USA" in bold text printed in all capital letters on an identification sticker on the back of the device.



117.   In addition to indicating the geographic origin of the products, Skybell actively and intentionally touts the importance of its products being "Made in USA" in its advertising and marketing.  For example, Skybell connects the statement that their products are "superior products" to the statement that "[o]ur manufacturing and distribution are in California.  All design, development and manufacturing is done in the USA" by putting these statements in the same paragraph.  For example, the following message is displayed on Skybell's "About Us" webpage.[8]

---

[8] http://www.skybell.com/about-us/.

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE

## Made in the USA

We are committed to creating superior quality products in America. We are located in Southern California and we handle all customer service in-house and in country. Our manufacturing and distribution are in California. All design, development and manufacturing is done in the USA.

118.   In an advertising video published on YouTube by Skybell, the Skybell HD is described as "Made in the USA."[9]  This video has over 100,000 views.  A screenshot of the video is below (highlights added).



119.   Skybell's "Press Kit," available from their website,[10] includes a "Skybell HD Press Sheet."  This press sheet shows an image of the Skybell HD device adjacent to an American Flag symbol and the words "Made in USA," as seen below.[11]

---

[9] https://www.youtube.com/watch?v=oFNENHGF5uk
[10] http://www.skybell.com/press/
[11] http://www.skybell.com/content/uploads/2017/03/skybell-press-kit-2017-03-28.zip.

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE



120.   Previous versions of the Skybell website have also included "Made in USA" language in describing Skybell Products.  The Skybell "About Us" page archived from February 17, 2014 (excerpted below) stated "Made in the USA."[12]

## Made in the USA

We are located in Southern California and we handle all customer service in-house. Our manufacturer and fulfillment center are within an hour drive. All design, development and manufacturing is done in the USA. We are committed to creating superior quality products in America.

121.   Skybell made the "Made in USA" designation a material and substantial part of its marketing campaign.  For example, in a November 2013 press release announcing that "Skybell Wi-Fi Doorbell Lets Users Answer Door from their Smartphone," the product was described as "**Rugged** – American-made craftsmanship means Skybell will work on homes and in climates around the world."[13]

---

[12] https://web.archive.org/web/20140217000049/http://www.Skybell.com:80/about/.

[13] https://store.Skybell.com/pages/press-Skybell-available-exclusively-amazon-com (emphasis in original).

122.   The official corporate Skybell Twitter account repeatedly and consistently advertised that its products are "Made in the USA," "American-made" or the equivalent. For example, an August 7, 2014 tweet (reproduced below), Skybell stated "We're proud to be developed and produced completely in the #USA! #AmericanMade."[14]



In another example, Skybell tweeted in reply to a customer's picture of an American flag: "Skybell HD is Made in the USA!" with the hashtag "#MadeInUSA."[15]



---

[14] https://twitter.com/MySkybell/status/497411891715506177.

[15] https://twitter.com/MySkybell/status/808036017915596800.

123.   Andrew Thomas, a co-founder of Skybell, responded to a journalist's question on Twitter asking which doorbells to review by stating that they should consider the Skybell because it was "made in USA (not china)."[16]



124.   Co-founder Andrew Thomas also tweeted a link to an article "products made in the USA" that positively reviewed the iDoorCam (a predecessor to Skybell), reproduced below.  That article stated "This communication tool is integrating smart technology with traditional home hardware — and it's all made in America."[17]



125.   The purported "Made in USA" quality of the Skybell products is also repeated in products targeted at international sales.  For example, TopSolute, which describes itself as "the European authorized Skybell HD reseller," prominently states that

---

[16] https://twitter.com/andrewthomas/status/802348120705101824.

[17] http://techzulu.com/9-technology-innovations-made-in-the-usa/.  *See also* https://twitter.com/MySkybell/status/562973864272363521 ("#DYK #Skybell is made and manufactured right here in the USA? Grab yours today!").

its products are "MADE IN THE USA" and that "Skybell is committed to creating superior quality products in America.  All design, development and manufacturing is done in the USA."[18]

### Skybell's "Made in USA" Representations Are Material

126.   Skybell's "Made in the USA" representations are of the type that tend to be meaningful, important, and material in their product selection decisions in relation to the Skybell Products.  *See, e.g.*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter. . . .  In particular, to some consumers, the 'Made in U.S.A.' label matters.  A range of motivations may fuel this preference, from the desire to support domestic jobs, to beliefs about quality, to concerns about overseas environmental or labor conditions, to simple patriotism.").

127.   Under Rule 11(b)(3), Ring alleges that Skybell's customers actually find these designations of national origin to be meaningful, important, and material in their product selection decisions.

128.   Under Rule 11(b)(3), Ring alleges that at least one customer has purchased a Skybell doorbell instead of a Ring doorbell on account of Skybell's "Made in USA" advertising.

129.   For example, in a recent third-party review of the Skybell HD 2.0, the reviewer stated "Skybell is still Made in the USA, brining [sic] you the highest quality for the most reliable device possible."[19]

---

[18] https://www.topsolute.com/index.php?route=information/information&information_id=4.

[19] https://makehomesafe.net/whats-new-skybell-hd-2-0/; *see also* http://blog.northstarhome.com/skybell-the-doorbell-for-the-21st-century/ ("It is completely weatherproof and made right here in the USA."); https://wirelessdoorbellreview.com/doorbell-reviews/skybell-review/ ("Skybell is a US manufactured quality doorbell and the company is always trying to improve its products quality and features."); http://www.smarterhomeautomation.com/reviews/skybell-hd-full-hd-video-doorbell-review/ ("Skybell is a US company.  They do all of their manufacturing in sunny southern California, and all of the customer service and support is in-house.").

130.   In a further example, in an "unboxing" video (a common piece of user-generated YouTube content where consumers open the box and describe a new product), a user opened the Skybell Trim Plus, inspected the back of the device where it says "Made in USA" and states "Ooh, Made in USA, look at that.  Wow this is impressive."[20]



***Skybell's Products Are Not "Made in USA"***

131.   The Skybell Products contain components that are not made in the USA.

132.   For example, the main circuit board of the Skybell HD, shown below, is marked "JYC," which indicates that the board was manufactured by J.Y. Circuit.  JY Circuits production factory is located in Korea.[21]



---

[20] https://youtu.be/A34LwLK-Jeo?t=1m55s.
[21] *See* http://www.jycircuit.net/about-us/.

20

133.    The camera board in the Skybell HD is marked "CM1013-SN02-A1."  This device is a product of Suyin Optronics, a manufacturer located in New Taiwan City, Taiwan.[22]



134.    The Skybell HD memory card, shown below, is clearly marked as having been made in China.



135.    The Skybell HD includes a chip marked with model number CYBL11172-56LQXI.  This model number indicates it is a "Programmable Radio-on-Chip With Bluetooth Low Energy" manufactured by Cypress Semiconductor Corporation.[23]  Under

---

[22] *See* http://www.suyinopt.com/eng/p1_about.aspx; *see also* http://www.suyinopt.com/eng/p2_product_detail.aspx?Class1=5 (listing the similarly named "CM2013-0V03" as a "Surveilliance Camera Module" manufactured by Suyin."); http://www.suyin-europe.com/about-suyin/ (showing Suyin Optotronics production sites in Suzhou and Dongguan, China).
[23] https://media.digikey.com/pdf/Data%20Sheets/Cypress%20PDFs/CYBL1xx7x_RevK_3-27-17.pdf.

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE

Rule 11(b)(3), Ring alleges that this Cypress Semiconductor device is not made in the USA.



136.   The Skybell HD includes a Wi-Fi USB module board that includes an embedded "MEDIATEK MT7601UN" semiconductor device.  The module board is a product of Xiao Ma Technology Co., Ltd, part no. XMR-MK21, and is manufactured in China.



137.   The Skybell HD includes a battery marked "503040A," shown below.  Under Rule 11(b)(3), Ring alleges that this is a Lithium Ion Polymer 3.7V battery that is manufactured in China.

///
///
///
///
///

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE



138.   The foregoing discussion of non-US components and parts of the Skybell HD is representative of the other Skybell Products.  In particular, under Rule 11(b)(3), Ring alleges at least a substantial portion of the components, housing, connectors, and other parts included in the Skybell Products are made outside of the United States.

139.   Under Rule 11(b)(3), Ring alleges that at least a portion of the manufacturing of the Skybell Products is not carried out in the United States.

140.   Under Rule 11(b)(3), Ring alleges that at least a portion of the design and development of the Skybell Products is not carried out in the United States.

**FIRST CAUSE OF ACTION**

**(False Designation of Geographic Origin Under the Lanham Act)**

141.   Ring incorporates by reference Paragraphs 1–140 as though fully set forth herein.

142.   Skybell deliberately advertises, markets, promotes, and identifies the Skybell Products as "Made in USA," "Made in the USA," "American Made," with an American Flag, and other marks indicating that the products are made in the United States of America.

///

///

///

143.   Skybell has made and continues to make unqualified designations of geographic origin.[24]

144.   The Skybell Products are not all or virtually all made in the United States, nor does Skybell have a reasonable basis to support its claim that its products are made in the United States.  The Skybell Products contain more than negligible foreign content as there are significant parts and processing that go into the product of non-U.S. origin.[25]

145.   Skybell's claims that the Skybell Products are "Made in the USA" constitute a false designation of geographic origin in violation of 15 U.S.C. § 1125(a)(1)(B). Skybell's false designation of geographic origin is a material false statement of fact in a commercial advertisement about its products.

146.   Skybell's false designation of geographic origin has the tendency to deceive a substantial segment of the audience of that advertising.

147.   Under Rule 11(b)(3), Ring alleges that Skybell's misrepresentation of geographic origin actually deceived a substantial segment of the audience of that advertising.

148.   Skybell caused its false designation of geographic origin to enter interstate commerce at least because Skybell sold its products across state lines and advertised across state lines.

149.   Ring is a competitor to Skybell.  By way of example, Ring and Skybell both manufacture, distribute, market, and/or sell video doorbells and related products, and thus are in direct competition for the same customers.  As Ring and Skybell compete in the

---

[24] *See, e.g.*, https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-standard#qualified.

[25] *See, e.g.*, https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf at 4 (stating the Federal Trade Commission Standard as: "For a product to be called Made in USA, or claimed to be of domestic origin without qualifications or limits on the claim, the product must be 'all or virtually all' made in the U.S." and "'All or virtually all' means that all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no — or negligible — foreign content.").

marketplace, the injury to Ring caused by Skybell's false designation of geographic origin is a commercial injury.

150.   Under Rule 11(b)(3), Ring alleges that Skybell's false designations of geographic origin have resulted in at least one customer purchasing a Skybell doorbell instead of a Ring doorbell, and thus Ring has suffered an economic injury.

151.   Under Rule 11(b)(3), Ring alleges that it has been, is, and is likely to continue to be damaged by Skybell's false designation of national origin because Skybell's advertising did have and/or has the tendency to create a direct diversion of sales from Ring to Skybell, or did or had the tendency to lessen the goodwill associated with Ring's products.

152.   Under Rule 11(b)(3), Ring alleges that its interests are likely to be injured by Skybell's false designation, and that it has suffered an injury that has been caused by the false designation.  Skybell is liable to Ring at least for Skybell's profits, damages sustained by Ring, and the costs of this action.  15 U.S.C. §§ 1117(a), 1125.

153.   Under Rule 11(b)(3), Ring alleges that Skybell's false designation of national origin has caused Ring to sustain monetary and non-monetary damages, and will continue to cause injury into the future, including irreparable harm.

## SECOND CAUSE OF ACTION

### (False Advertising under California Business & Professions Code § 17500 *et seq.*)

154.   Ring incorporates by reference Paragraphs 1 through 153 as though fully set forth herein.

155.   Skybell advertises, markets, promotes, and identifies the Skybell Products with unqualified designations of domestic origin, including "Made in USA," "Made in the USA," "American Made," with an American Flag, and other marks indicating that the products are made in the United States of America.

156.   The Skybell Products include a not insubstantial amount of parts, manufacturing, and other value that comes from outside of the United States.

///

157.   Skybell falsely advertised the Skybell Products as being "Made in USA" when those products include content that is not "Made in USA," in violation of California Business & Professions Code §§ 17500 *et seq.*, including § 17533.7(a).

158.   Skybell intends to sell and offer for sale the Skybell Products.

159.   Skybell knew the statements to be untrue or misleading, or by the exercise of reasonable care should have known those statements to be untrue or misleading.

160.   Ring is a competitor of Skybell.  Under Rule 11(b)(3), Ring alleges that Skybell's acts have at least tended to deceive a substantial number of Ring customers and potential customers, and those acts were material in that they were likely to influence purchasing decisions of those in the marketplace for Skybell and Ring products.

161.   Under Rule 11(b)(3), Ring alleges that Skybell's unqualified designations of domestic origin have resulted in at least one customer purchasing a Skybell doorbell instead of a Ring doorbell, and thus Ring has suffered an economic injury.

162.   Under Rule 11(b)(3), Ring alleges that, as a proximate result of Skybell's false advertising, Ring has suffered irreparable harm, and will continues to suffer irreparable harm unless Skybell ceases and corrects its false and misleading advertising promotions.  Ring is entitled to permanent injunctive relief, as well as positive injunctive relief including but not limited to corrective advertising and product recalls.

## THIRD CAUSE OF ACTION

**(Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)**

163.   Ring incorporates by reference Paragraphs 1–162 as though fully set forth herein.

164.   Skybell's "Made in USA" advertising constitutes unfair competition in violation of California Business & Professions Code §§ 17200 *et seq.*

165.   Skybell's business acts and practices with respect to advertising the Skybell Products as "Made in USA" and related indications of national origin are unlawful in that they violate at least:

///

a.    Lanham Act (15 U.S.C. § 1125, including 15 USC § 1125(a)(1)(B)), at least as discussed above in Ring's First Cause of Action;

b.    California Business & Professions Code §§ 17500 *et seq.*, including § 17533.7(a), at least as discussed above in Ring's Second Cause of Action;

c.    15 U.S.C. § 45a, at least because the Skybell Products are labeled as "Made in USA" (or the equivalent) but are in fact not all or virtually all of domestic origin;[26] and

d.    The Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, at least because "using deceptive representations or designations of geographic origin in connection with goods or services" is an unlawful act under Cal. Civ. Code § 1770(4). Skybell's marking of the Skybell Products as Made in USA is a deceptive designation of geographic origin in connection with selling its products.  Skybell's advertising is also unlawful under at least under Cal. Civ. Code §§ 1770(2), (5), (8), and (9).

166.    Skybell's false marking of the Skybell Products as "Made in USA" (or the equivalent), and related advertising and marketing, are unfair in violation of California Business and Professions Code § 17200 at least because the effects of the false identification unfairly threatens and harms competition, including direct competitor Ring. For example, it is unfair for Skybell to benefit by diverting sales directly from Ring to Skybell through the use of false and misleading designations of national origin.

167.    Skybell's false marking of the Skybell Products as "Made in USA" (or the equivalent), and related advertising and marketing, are fraudulent business practices in violation of California Business and Professions Code § 17200 at least because members of the public are likely to be deceived by the false designations of national origin.  It is likely that a reasonable customer would find the designation of Skybell's product as "Made in USA" to be material in making a purchasing decision.

---

[26] *See* https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf.

27

168.    Skybell's false marking of the Skybell Products as "Made in USA" (or the equivalent), and related advertising and marketing, are unfair, deceptive, untrue, or misleading advertising in violation of California Business and Professions Code § 17200 at least because members of the public are likely to be deceived as to the national origin of Skybell's products.

169.    Ring is a competitor of Skybell.  Under Rule 11(b)(3), Ring alleges that Skybell's unlawful business practices and acts have harmed Ring at least because the practices and acts tended to deceive a substantial number of Ring customers and potential customers, and those acts were material in that they were likely to influence purchasing decisions of those in the marketplace for Skybell and Ring products.

170.    Under Rule 11(b)(3), Ring alleges that Skybell's unlawful, unfair, and fraudulent business practices have resulted in at least one customer purchasing a Skybell doorbell instead of a Ring doorbell, and thus Ring has suffered an economic injury.

171.    Under Rule 11(b)(3), Ring alleges that as a proximate result of Skybell's false advertising, Ring has suffered irreparable harm, and will continues to suffer irreparable harm unless Skybell ceases and corrects its false and misleading advertising promotions.  Ring is entitled to permanent injunctive relief, as well as positive injunctive relief including but not limited to corrective advertising and product recalls.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of Non-Infringement of the '202 Patent)

172.    Ring incorporates by reference Paragraphs 1–171 as though fully set forth herein.

173.    Ring has not and does not directly or indirectly infringe any valid claim of the '202 patent, either literally or under the doctrine of equivalents.

174.    In Count 1 of the Amended Complaint, Skybell accuses Ring of infringing the '202 patent.

175.    Based on Skybell's filing of the Amended Complaint asserting infringement of the '202 patent, there exists a substantial controversy of sufficient immediacy and

1    reality to warrant the issuance of a declaratory judgment as to whether the claims of the

2    '202 patent are infringed by Ring.

3        176.   For example, the accused Ring products do not include a "wall that separates

4    the first sensor from the second sensor" as required by claim 1 of the '202 patent.

5        177.   Ring is entitled to a judicial determination that it has not infringed and does

6    not infringe any valid claim of the '202 patent.

7                                   **PRAYER FOR RELIEF**

8        Ring requests that the Court:

9            a.    Grant an award of compensatory damages, restitution lost profits, and

10   injunctive relief—including corrective advertising and other affirmative injunctive

11   relief—for Skybell's violation of the Lanham Act, Cal. Bus. & Prof. Code §§ 17500 and

12   17200;

13           b.    Declare this to be an exceptional case within the meaning of 35 U.S.C.

14   § 285 and award Ring its costs and reasonable attorneys' fees incurred in this action;

15           c.    Find and declare that Ring has not and is not infringing any of the

16   Patents-in-Suit and that the asserted claims of the patents in suit are invalid and/or

17   unenforceable;

18           d.    Award to Ring its costs and expenses associated with this case,

19   together with interest; and

20           e.    Grant such other and further relief as the Court may deem just and

21   proper under the circumstances.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

## <u>JURY DEMAND</u>

Ring demands a jury trial on all issues and claims so triable in this action pursuant to Rule 38 of the Federal Rules of Civil Procedure

Dated:  May 30, 2018                              DURIE TANGRI LLP

                                         By:  _____
                                                    */s/ Clement S. Roberts*
                                                 CLEMENT S. ROBERTS
                                                 LAURA E. MILLER
                                                 JOSHUA D. FURMAN

                                              Attorneys for Defendant
                                              RING INC.

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Clement S. Roberts*

CLEMENT S. ROBERTS
LAURA E. MILLER
JOSHUA D. FURMAN

DEFENDANT'S ANSWER, DEFENSES, & COUNTERCLAIMS TO PLAINTIFF'S
AMENDED COMPLAINT / CASE NO. 8:18-CV-00014-JVS-JDE