RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Paul Kroeger, SBN 229074
pkroeger@raklaw.com
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
SKYBELL TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| SKYBELL TECHNOLOGIES, INC., <br><br> Plaintiff <br><br> v. <br><br> RING, INC. <br><br> Defendant. | **Case No. 8:18-CV-00014-JVS-JDE** <br><br> **PLAINTIFF SKYBELL TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP** <br><br> **[Declarations of Joseph F. Scalisi and Marc A. Fenster and [Proposed] Order filed concurrently]** <br><br> **Hearing:** <br> Date:  September 10, 2018 <br> Time: 1:30 p.m. <br> Place: Courtroom 10C <br> Judge: Hon. James V. Selna |

**TO THE COURT AND ALL PARTIES AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 10, 2018, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 10C of this Court, located at 411 West Fourth Street, Santa Ana, California, Plaintiff SkyBell Technologies, Inc. ("SkyBell") will and hereby does move this Court to disqualify Orrick Herrington & Sutcliffe ("Orrick") from any further representation of Ring,

RUSS, AUGUST & KABAT

1    Inc. ("Ring") in the matter.

2          The grounds for this motion are that before becoming counsel for Defendant

3    Ring, Orrick met with SkyBell, formed an attorney-client relationship with SkyBell

4    in connection with the same matter, and received substantial confidential

5    information about SkyBell and its patent portfolio, including its intent to file this

6    action against Ring.  Accordingly, Orrick's representation of Ring in this matter is

7    precluded by Rule 3-310 of the California Rules of Professional Conduct.  Orrick's

8    purported defense, that is has created an "ethical wall" around the attorneys who

9    received the confidential information, is not legally recognized, and cannot cure the

10   conflict.

11         This Motion is made following the conference of counsel, the first iteration of

12   which took place by telephone on June 14, 2018, and continued thereafter by email

13   and additional phone calls. This Motion is based upon this Notice of Motion, the

14   accompanying Memorandum of Points and Authorities, all cited authorities, all

15   pleadings and papers on file in this action, the concurrently filed declarations of

16   Joseph F. Scalisi and Marc A. Fenster, and such oral argument and other evidence

17   as the Court shall consider prior to or at the time of hearing on this Motion.

20                              Respectfully submitted,

21   Dated:  July 16, 2018        **RUSS AUGUST & KABAT**

22                              By:   */s/ Paul A. Kroeger*

24                              Marc A. Fenster, SBN 181067
                                Paul A. Kroeger, SBN 229074
25                              12424 Wilshire Boulevard
                                Twelfth Floor
                                Los Angeles, California 90025
26                              Telephone: (310) 826-7474
                                Facsimile: (310) 826-6991
27
                                *Attorneys for Plaintiff*
28                              *SkyBell Technologies, Inc.*

RUSS, AUGUST & KABAT

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

# Table of Contents

Page

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 3

    A.   SKYBELL APPROACHES ORRICK ABOUT REPRESENTING IT IN LITIGATION ENFORCING ITS PATENT PORTFOLIO INCLUDING AGAINST RING ................................................... 3

    B.   ORRICK PROVIDES SKYBELL WITH THE NEARLY 40-PAGE CONFIDENTIAL STRATEGY MEMO ..................................... 4

    C.   SKYBELL DOES NOT RETAIN ORRICK, BUT DISCUSSIONS ABOUT ORRICK'S INVOLVEMENT CONTINUE ........................ 7

    D.   RING'S LEAD ATTORNEY, CLEMENT ROBERTS, JOINS ORRICK AFTER THE SUIT IS FILED AND ORRICK APPEARS ON RING'S BEHALF ...................................................................... 7

    E.   ORRICK'S PURPORTED "ETHICAL WALL" TO PROTECT MR. ROBERT'S REPRESENTATION OF RING ..................................... 8

III.  ORRICK SHOULD BE DISQUALIFIED FROM REPRESENTING RING IN THIS CASE BASED ON ITS PRIOR REPRESENTATION OF SKYBELL IN THE SAME MATTER ....................................................... 10

    A.   LEGAL STANDARDS ................................................................. 10

    B.   DISQUALIFICATION OF ORRICK IS MANDATED BY ITS PRIOR REPRESENTATION OF SKYBELL RELATED TO THIS LAWSUIT AGAINST RING ................................................... 11

    C.   ORRICK'S PURPORTED ETHICAL WALL DOES NOT AND CANNOT REMEDY THIS CONFLICT ......................................... 14

    D.   THE RECENTLY APPROVED CHANGES TO THE CALIFORNIA RULES DO NOT REQUIRE OR JUSTIFY A DIFFERENT RESULT ................................................................................. 17

    E.   ORRICK'S OUT-OF-DISTRICT LEGAL AUTHORITY PROVIDES NO SUPPORT FOR ITS CONTINUED REPRESENTATION OF RING ..................................................................................... 20

IV.   CONCLUSION ................................................................................... 22

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISQUALIFY

**Table of Authorities**

Page

**Cases**

*Beltran v. Avon Products, Inc.*, 867 F. Supp. 2d 1068 (C.D. Cal. 2012) ...10, 11, 12, 13

*Edwards Wildman Palmer LLP v. Superior Court*
231 Cal. App. 4th 1214 (2014) ................................................................. 12

*Flatt v. Super. Ct.*, 9 Cal.4th 275
(1994)..............................................................................................10, 11, 16

*H.F. Ahmanson & Co. v. Salomon Bros, Inc.*, 229 Cal. App. 3d 1445
(1991).................................................................................................. 10, 11

*Henriksen v. Great American Savings & Loan*
11 Cal. App. 4th at 109 (1992) ................................................................ 15

*Hollis v. Ogeneski*
No. NNHFA144063759S, 2014 WL 7589285
(Conn. Sup. Ct. Dec. 4, 2014) .......................................................... 20, 21

*Jessen v. Hartford Cas. Ins. Co.*
111 Cal. App. 4th 698 (2003) .................................................................. 12

*Kerner v. Superior Court*
206 Cal. App. 4th 84 (2012) .................................................................... 12

*Kirk v. First American Title Ins.*
183 Cal. App. 4th 776 (2010) ............................................................ 14, 15

*Meza v. H. Muelhstein & Co.*
176 Cal. App. 4th at 969 (2009) .............................................................. 15

People *ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*
20 Cal.4th 1135 (1999)..................................................................10, 11, 16

*Rodriguez v. W. Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) ................................................................... 10

*The Vaccine Center, LLC v. Glaxosmithkline LLC*
No. 2:12-CV-01849-JCM-NJK, 2013 WL 1787176 (D. Nevada April 23, 2013 ................................................................................................... 20, 21

*Trone* v. Smith
621 F.2d 994 (9th Cir. 1980) ............................................................ 11, 13

# I.    INTRODUCTION

California law provides that an attorney may not be adverse to a former client in a matter substantially related to a prior representation. The law firm of Orrick, Herrington, and Sutcliffe ("Orrick"), which recently substituted in as counsel for Defendant Ring, Inc. ("Ring") (replacing Ring's prior counsel Durie Tangri LLP ("Durie")) previously served as attorneys for Plaintiff SkyBell Technologies, Inc. ("SkyBell") in connection with the same matter in which it now seeks to appear on behalf of the opposing party, Ring.  Accordingly, Orrick should be disqualified from any further representation of Ring in this lawsuit. SkyBell previously approached Orrick about bringing this lawsuit against Ring and shared with Orrick substantial confidential information about this suit. Orrick's disqualification is thus mandated by California law.

Before this case was filed, SkyBell contacted Orrick about potentially representing it *in this very patent infringement action against Ring.* As part of this process, there was an initial intake call in which conflicts were cleared and then two separate meetings (one telephonic and a latter in-person at SkyBell's offices) in which case strategy was discussed that collectively lasted at least four hours.  During these meetings, SkyBell shared confidential information with Orrick including its settlement strategy for this case. SkyBell also shared with Orrick tear-downs of the products thought to infringe. Orrick used this information to draft a nearly forty-page memorandum, prepared with the participation of over ten attorney and non-attorney Orrick employees, that was exchanged with SkyBell in advance of the in-person meeting. Orrick itself marked this memorandum "privileged & confidential."

Even though Orrick and SkyBell did not ultimately enter into a formal engagement agreement, Orrick formed an attorney-client relationship with SkyBell. Orrick provided advice to SkyBell and received its confidential information. This creates a conflict of interest that precludes Orrick from representing Ring under Rule

1

RUSS, AUGUST & KABAT

3-310(E) of the California Rules of Professional Conduct. More than 10 Orrick employees, including entire departments, are actually (not just imputedly) disqualified by their receipt and review of SkyBell's confidential information and settlement strategy. Further, every attorney within Orrick is imputed with knowledge of SkyBell's confidential information and is vicariously disqualified as a matter of California law.

Orrick does not seriously dispute that the lawyers and others that worked on the SkyBell matter are conflicted. It argues that because it has erected an "ethical wall" around a large portion of its firm, Clement Roberts, who joined Orrick in early June and was Ring's lead attorney at Durie, may continue his representation of Ring now that he is with Orrick, with the assistance of other Orrick lawyers.[1] Orrick's position runs counter to California law.

California does not allow a law firm to switch sides in the same matter.  No ethical wall can allow a firm to switch sides as Orrick seeks to do. While California does allow a conflicted attorney to be walled off from working on a matter when joining a new firm in certain circumstances, that is not what happened here, and in any event, California finds those walls ineffective in circumstances in which the attorney: (1) worked for the opposing party and (2) is "switching sides" in the same matter. Indeed, California categorically prohibits ethical walls in such circumstances and finds the disqualification of both the attorney and law firm is mandatory.

Orrick's assertion that its use of an ethical wall is in keeping with the Supreme Court's recently approved changes to California's Rules of Professional Conduct (effective November 1, 2018) is likewise without merit. The new Rule only recognizes the effectiveness of the ethical wall where "the lawyer who received the information took reasonable measures to avoid exposure to more information than

---

[1] SkyBell has no information as to whether the Orrick lawyers presently assisting Mr. Roberts were involved in Orrick's prior representation of SkyBell concerning the suit against Ring.

2

was reasonably necessary to determine whether to represent the prospective client." Declaration of Marc A. Fenster ("Fenster Decl."), Ex. B at 55. Here, Orrick obtained far more than such limited information—as is demonstrated by the nearly 40-page strategy memorandum it prepared. Indeed, Orrick has been unable to identify authority from any jurisdiction, and certainly none from California, that supports walling off a large portion of its firm to preserve Mr. Robert's representation of Ring along with other Orrick attorneys who all have imputed knowledge of SkyBell's attorney-client communications and confidences.

Accordingly, Orrick should be disqualified from any further representation of Ring in this matter.

## II.   STATEMENT OF FACTS

### A.   SKYBELL APPROACHES ORRICK ABOUT REPRESENTING IT IN LITIGATION ENFORCING ITS PATENT PORTFOLIO INCLUDING AGAINST RING

Since 2013, SkyBell has been in the business of manufacturing and selling smart video doorbells which allow customers to interact with persons ringing their doorbell via a mobile device, even if they are not present in the home, among other things. Declaration of Joseph F. Scalisi ("Scalisi Decl."), ¶ 2. SkyBell currently sells several models of these smart video doorbells including the SkyBell HD family, the SkyBell SLIM family, and the SkyBell TRIM family, along with certain accessories. *Id.*

Over the past few years SkyBell has invested significant resources in developing a patent portfolio in the video doorbell technology field. *Id.* ¶ 3. It currently has 49 issued U.S. utility patents and 29 design patents, with many applications pending. *Id.*

In mid-2017, SkyBell decided to research the potential of enforcing its patent portfolio against its various competitors in the market, including against Ring. *Id.* ¶

RUSS, AUGUST & KABAT

4. In October of that year, SkyBell approached Travis Jensen, an Orrick Partner, about potentially representing it in such litigation. *Id.* ¶ 5. After being advised that Orrick had no conflicts in such representation, including against Ring, Mr. Jensen met with SkyBell's Chief Executive Officer, Joseph Scalisi, SkyBell's Chief Financial Officer, Robert Mahan, and two of its outside patent attorneys, Eric Wengreen and Wes Schwie on two separate occasion: (1) an hour-long conference call on November 1, 2017; and (2) a three-hour, in-person meeting at SkyBell's Irvine offices on November 8, 2017. *Id.* ¶ 5-7.

During these meetings, the following topics were discussed: (1) the key patents to be enforced against Ring; (2) the reasons SkyBell believed Ring to be infringing; (3) issues concerning validity and the prior art; (4) SkyBell's financial position; and (5) settlement strategy. *Id.* ¶ 7. Further, in advance of the in-person meeting, SkyBell sent to Mr. Jensen various materials, including tear-downs of the Ring products SkyBell believed to be infringing. *Id.* ¶ 8.

At no point during this interaction did Orrick ever inform SkyBell that it should withhold any information concerning the planned lawsuit until it had decided to take the case. Scalisi Decl. ¶ 15. Indeed, SkyBell was encouraged to provide all the information it had, and it complied where possible. *Id.*

## B.   ORRICK PROVIDES SKYBELL WITH THE NEARLY 40-PAGE CONFIDENTIAL STRATEGY MEMO

In advance of the November 9 meeting at SkyBell's offices, Orrick prepared an almost 40-page memorandum entitled "Proposal for Enforcement Strategy for SkyBell" (the "Strategy Memo") as shown below:

MOTION TO DISQUALIFY

PRIVILEGED AND CONFIDENTIAL

**orrick**

**Proposal and Enforcement Strategy for**

# SkyBell

November 8, 2017

CONTACT:
**Travis Jensen**
Partner
T  650.614.7458
E  tjensen@orrick.com

Scalisi Decl., Ex. A at 1.

The Strategy Memo included Orrick's recommendations on patents to assert, potential Defendants—including Ring—and other litigation strategy. Every page of substantive analysis in the Strategy Memo was labeled "Privileged & Confidential" by Orrick. Scalisi Decl., Ex. A, *passim*.[2]

Although much of the memo is privileged and confidential, the point-headings demonstrate Orrick's extensive delving into both the confidences of SkyBell, and

---

[2] The version of the Strategy Memo attached to Mr. Scalisi's declaration is heavily redacted to preserve the attorney-client privilege—which SkyBell does not waive. As the memo contains attorney-client information related to this case, SkyBell does not feel that it would be appropriate to submit an unredacted version for this Court's *in camera review*. SkyBell is, however, willing to make the unredacted version available for inspection by a Special Master or Magistrate Judge, not assigned to this case, if the Court feels it necessary.

5

RUSS, AUGUST & KABAT

the rendering of confidential advice to SkyBell based on those confidential communications—the hallmark of an attorney-client relationship. Accordingly, the table of contents for the Strategy Memo is reproduced below:

CONTENTS                                                    PRIVILEGED AND CONFIDENTIAL

**Executive Summary**

**Executive Summary** ................................................................................ **3**

**Background**

**Background** .......................................................................................... **5**
Video Doorbell Market ................................................................................ 5
SkyBell ...................................................................................................... 6
Strategic Objectives .................................................................................. 6
SkyBell's Patent Portfolio .......................................................................... 7
Patent Litigation Venues ............................................................................ 8
IPR Invalidity Challenge ............................................................................ 10

**Strategic Analysis and Recommendations**

**Strategic Analysis and Recommendations** ............................................ **12**
Phase 1—Enforcement Against ████████████ ........................................ 12
Phase 2—Enforcement Against Ring ████████ ...................................... 16
Phase 3—Enforcement Against ██████ ██████████████ ...................... 19
Proposed Action Plan ................................................................................ 20

**Orrick's  Proposed Team**

**Orrick's Proposed Team** ........................................................................ **25**

**Fee Proposal and Budget**

**Fee Proposal and Sample Budget** .......................................................... **31**

**Appendix A**

**Appendix A—Venue Statistics** ................................................................ **35**

Scalisi Decl., Ex. A at 1. As shown above, the Strategy Memo includes more than ten-pages of "Strategic Analysis and Recommendations." *Id.* at 1, 12-23. It further includes an almost five-page "Proposed Action Plan." *Id.* at 1, 20-23.

A potential lawsuit against Ring is specifically discussed. The Strategy Memo includes a section entitled "Enforcement Against Ring." *Id.* at 1, 16-20. Indeed, the Strategy Memo notes that Orrick has conducted a "cursory review of the Ring . . . products" and "provide[s] some preliminary thoughts about Ring's product." *Id.* at 16. Based on this review, Orrick "suggest[s] Ring . . . as [a] likely target." *Id.*

6

Orrick suggested a team of attorneys to represent SkyBell in the suit against Ring that were located in three of its offices spanning the United States. *Id.* at 24-29. Specifically, Orrick recommended: (1) Tyler Jensen from its Silicon Valley Office (*id.* at 25-27); (2) Tyler Miller from its New York Office (*id.* at 28); and (3) Johannes "Hans" Hsu from its Orange County Office (*id.* at 29).   Mr. Jensen informed SkyBell that he had spoken with these attorneys about SkyBell's potential lawsuit against Ring during the in-person meeting. Scalisi Decl. ¶ 12. During later discussions, Orrick suggested that Chris Ottenweller from its Silicon Valley Office additionally be made a part of the proposed team. *Id.*

## C.   SKYBELL DOES NOT RETAIN ORRICK, BUT DISCUSSIONS ABOUT ORRICK'S INVOLVEMENT CONTINUE

SkyBell ultimately decided not to retain Orrick for the lawsuit against Ring, instead retaining Susman Godfrey, L.L.P., which filed this lawsuit. Although SkyBell did not to retain Orrick for the litigation, SkyBell had discussions with Orrick about it potentially representing SkyBell in any IPR challenges to the patents that may be filed, or about acting as shadow counsel. *Id.* ¶ 13.

## D.   RING'S LEAD ATTORNEY, CLEMENT ROBERTS, JOINS ORRICK AFTER THE SUIT IS FILED AND ORRICK APPEARS ON RING'S BEHALF

SkyBell filed this lawsuit against Ring on January 5, 2018. On January 17, 2018, Durie first appeared as counsel for Ring. Dkt. No. 18. Clement S. Roberts of Durie was listed as Ring's lead counsel. *Id.*

Mr. Roberts would continue to represent Ring as its lead counsel at Durie for the next six months. During that time, Durie, filed several stipulations (Dkt. Nos. 28 and 31), filed an Answer and Counterclaims on behalf of Ring (Dkt. No. 33), and participated in the meet and confer for the Rule 26(f) report (Dkt. No. 38).

On or about June 1, 2018, Mr. Roberts joined Orrick and filed a notice of

7

RUSS, AUGUST & KABAT

change of counsel to that effect. Dkt. No. 40.  Multiple other attorneys from Orrick, Alyssa Caridis, Andrew J. Kim, and Michael Chow, have since also appeared on Ring's behalf. At least two of these attorneys, if not all three, were with Orrick at the time of Mr. Jensen's consultation with SkyBell. *See* *https://www.orrick.com/News/2013/05/Orange-County-Team-Prevails-in-Unique-Commercial-Landlord-Tenant-Case#* (last visited June 21, 2018) (an article from May 21, 2013 noting Mr. Chow was part of a litigation team); https://www.orrick.com/News/2017/01/Orrick-Welcomes-18-New-Partners   (last visited June 21, 2018)  (noting Ms. Caridis was named partner as of January 1, 2017).

### E.   ORRICK'S PURPORTED "ETHICAL WALL" TO PROTECT MR. ROBERT'S REPRESENTATION OF RING

Prior to filing the substitution of counsel, Mr. Roberts informed SkyBell's counsel of his change in law firms, and inquired as to whether SkyBell would consent to the substitution.[3] Fenster Decl., Ex. C. SkyBell's attorneys responded that they had just learned of Orrick's prior contact with SkyBell, and could not provide an answer as to consent until their investigation was complete. *Id.* Mr. Roberts respond as follows:

> While Orrick is of the view that no confidential information was communicated by SkyBell to Orrick . . ., in an abundance of caution, prior to my joining Orrick, the firm set up an ethical screen walling off everyone from Orrick who participated in or assisted the pitch (the "Screened Group"), and has also collected and segregated all materials related to the process.

*Id.* Mr. Roberts went on to state:

> As a result of those measures:
>
> 1.   The Screened Group will not work on the Ring matter.
>
> 2.   Orrick personnel working on the Ring matter and members of the Screened Group will not engage in any communication

---

[3] Initially, Mr. Roberts simply informed counsel for SkyBell that he had changed firms and inquired as to whether there was any objection to the substitution. Fenster Decl., Ex. C.  Orrick's pre-existing conflict was not mentioned. *Id.*

8

RUSS, AUGUST & KABAT

with each other regarding the Ring matter or the pitch to SkyBell.

3.     Orrick Personnel working on the Ring matter will not obtain access to, possess, read, or receive any file, document, e-mail, voicemail, or other client document or communication related to the SkyBell pitch. Members of the Screened Group will not obtain access to, possess, read, or receive any file, document, e-mail voicemail, or other client document or communication related to the Ring matter.

4.     Members of the Screened Group and Orrick personnel working on the Ring matter will take care at firm meetings and social events not to discuss the Ring matter or the SkyBell pitch, with, or in the presence of, each other.

*Id.*[4]

During a later meet and confer as part of bringing this motion, Orrick's Chief Legal Officer, Larry Low, explained that this "Screened Group" consisted of at least the following attorneys, staff, and departments:

1.     Attorney Travis Jensen;

2.     An employee in the marketing department;

3.     Leaders in Orrick's intellectual property group;

4.     Members of Orrick's economics department;

5.     The head of the Intellectual Property Business Group;

6.     The Director of Marketing Intellectual Property;

7.     David Friese (analyst financial alternative billing);

8.     Attorney Stan Jensen (co-lead business intellectual property);

9.     Attorney Denise Mingrown;

10.    Attorney Scott Renardo;

11.    Attorney Tyler Miller;

12.    Attorney Andrew Natarro;

13.    Attorney Chris Ottenweller; and

14.    Attorney Mark Wine.

Fenster Decl., ¶ 4.

---

[4] The timing of this email suggests that Mr. Roberts was aware of the conflict when he made the decision to leave Durie and join Orrick.

9

**III.   ORRICK   SHOULD   BE   DISQUALIFIED   FROM REPRESENTING RING IN THIS CASE BASED ON ITS PRIOR REPRESENTATION OF SKYBELL IN THE SAME MATTER**

**A.   LEGAL STANDARDS**

Rule 3-310(E) California Rules of Professional provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Disqualification of counsel based on a violation of this Rule is governed by California state law. See *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). "Disqualification may be predicated on the existence of a conflict of interest." *Beltran v. Avon Products, Inc.* 867 F. Supp. 2d 1068, 1077 (C.D. Cal. 2012), citing People *ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145 (1999).

"In a successive representation case with potential conflicts of interest," as here, [5] "the chief fiduciary value jeopardized is that of client confidentiality." *Flatt v. Super. Ct.*, 9 Cal.4th 275, 283 (1994). In such circumstances "disqualification of counsel is warranted under two situations: (1) the attorney in fact has adverse confidential information or (2) the attorney's acquisition of confidential information is presumed because the prior and present cases are substantially related." *Beltran*, 867 F. Supp. 2d at 1077. In the first scenario, the former client "may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." *H.F. Ahmanson & Co. v. Salomon Bros, Inc.*, 229 Cal. App. 3d 1445, 1452 (1991).

---

[5] For the purposes of this motion, SkyBell does not argue that it was a current client of Orrick as of the time that Mr. Roberts joined the firm. Accordingly, the standards for disqualification in cases of successive representation apply to this Motion.

10

"However, it is well-established that proof of actual possession of confidential information is not necessary to disqualify the former attorney." *Beltran*, 867 F. Supp. 2d at 1077. Rather, under the second scenario for disqualification, it is enough that the attorney is acting adversely to the former client and a "substantial relationship" exists between the subjects of the current and former engagements. *H.F. Ahmanson & Co.*, 229 Cal.App.3d at 1452 & n. 2. *See also Trone* v. Smith, 621 F.2d 994, 998 (9th Cir. 1980) ("The relevant test for disqualification is whether the former representation is 'substantially related' to the current representation."). Where a substantial relationship between the successive representations is established, "access to confidential information by the attorney in the course of the first representation . . . is presumed and disqualification of the attorney's representation of the second client is mandatory." *Flatt*, 9 Cal.4th at 283.

In such circumstances, the disqualification is not only for the attorney who directly received the information —"the disqualification extends vicariously to the entire firm." *Flatt*, 9 Cal.4th at 283; *see also SpeeDee*, 20 Cal.4th at 1139 ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."); *Trone*, 621 F.2d at 999 ("Once the attorney is found to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former client.").

## B.   DISQUALIFICATION OF ORRICK IS MANDATED BY ITS PRIOR REPRESENTATION OF SKYBELL RELATED TO THIS LAWSUIT AGAINST RING

In this case, Orrick's representation of SkyBell with respect to this lawsuit against Ring, disqualifies it, and every attorney therein, from representing Ring in this matter. Even though no engagement agreement was ever signed, SkyBell was unquestionably a client of Orrick in November of 2017.  Under California law, "[n]o formal agreement or compensation is necessary to create an attorney-client relationship." *Edwards Wildman Palmer LLP v. Superior Court*, 231 Cal. App. 4th

11

1214, 1225-26 (2014). Instead, "'[a]n attorney-client relationship exists for purposes of the [attorney-client] privilege whenever a person consults an attorney for the purpose of obtaining the attorney's legal advice.'" *Id.* at 1226 quoting *Kerner v. Superior Court*, 206 Cal. App. 4th 84, 116-17 (2012).

Accordingly, Orrick is disqualified from its representation of Ring in *either* of the following scenarios: (1) Orrick received adverse confidential information from SkyBell; or (2) the prior and present cases are substantially related. *Beltran*, 867 F. Supp. 2d at 1077. Here, both scenarios are present.

**First**, although Orrick contended that it received no confidential information from SkyBell, that assertion is plainly false. SkyBell provided Orrick with confidential information about its intended lawsuit with Ring. Among other things SkyBell provided information concerning, (1) the key patents to be enforced against Ring; (2) the reasons SkyBell believed Ring to be infringing; (3) issues concerning validity and the prior art; (4) SkyBell's financial position; and (5) settlement strategy. Scalisi Decl. ¶ 7. SkyBell further provided to Orrick tear-downs of the Ring products believed to be infringing. *Id.* ¶ 8. Moreover, this information is still in Orrick's possession and has not been yet been provided to SkyBell's new counsel. Fenster Decl. ¶ 5 & Ex. D.

**Second**, Orrick's prior representation of SkyBell is clearly "substantially related," if not identical, to the current matter. Under California law, a substantial relationship exists when "the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003). *See also Beltran*, 867 F. Supp. 2d at 1082 ("the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former

12

RUSS, AUGUST & KABAT

1  representation given its factual and legal issues is also material to the evaluation,

2  prosecution, settlement or accomplishment of the current representation given its

3  factual and legal issues").

4      In this case, SkyBell approached Orrick about representing it in a patent

5  enforcement action against Ring.  Scalisi Decl. ¶¶ 5-7. As noted above, SkyBell

6  discussed with Orrick the patents it thought should be enforced against Ring, issues

7  concerning validity of those patents and SkyBell's financial position and settlement

8  strategy. *Id.* at ¶ 7. Orrick then proceeded to author the nearly forty-page Strategy

9  Memo providing a proposed action plan for the case against Ring. *Id.*, Ex. A. Orrick

10  now seeks to represent the opposing party, Ring, in the very lawsuit that was

11  discussed. The matters are plainly substantially related.[6] Here, far more than the

12  required reasonable possibility exists that information provided by SkyBell to Orrick

13  could be used against SkyBell were Orrick to continue to represent Ring in this

14  lawsuit. This is all that is required to find the matters substantially related, and that

15  Orrick should be disqualified. *See Trone*, 621 F.2d at 998 (If a "reasonable

16  possibility" exists that "confidences were disclosed which could be used against the

17  client later, adverse representation, a substantial relationship between the two cases

18  is presumed.").

19      Accordingly, Orrick's prior representation of SkyBell in this case against Ring

20  precludes its continued representation of Ring in this matter. California law

21  mandates Orrick's disqualification.

RUSS, AUGUST & KABAT

---

[6] To the extent Orrick asserts that the lawsuit is not substantially related because it would have asserted additional or different patents or claims, California law does not require exact identity of claims for the matters to be substantially related. *See Beltran*, 867 F. Supp. 2d at 1082 ("Although none of the prior Avon cases specifically involved claims that Avon purportedly misrepresented that it did not test on animals, identity of claims are not required."); *Trone*, 621 F.2d at 1000 ("The substantial relationship test does not require that the issues in the two representations be identical.").

13

## C. ORRICK'S PURPORTED ETHICAL WALL DOES NOT AND CANNOT REMEDY THIS CONFLICT

Although Orrick contends through Mr. Roberts that "no confidential information was communicated by SkyBell to Orrick," Fenster Decl., Ex. C, it does not seriously contest that Mr. Jensen and the other attorneys, staff, and departments that worked on the SkyBell matter are conflicted from this case. Instead, Orrick contends that it may simply create an ethical wall around them, precluding them from communicating with Mr. Roberts and the other Orrick lawyers and personnel who are working on this case, and that will solve the conflict. Orrick's purported ethical wall is ineffective and improper under California law.

California has never recognized an ethical wall that cures a conflict of interest between a law firm and a former client in the same matter. Mr. Jensen and other Orrick attorneys, and by operation of law, the entire Orrick firm, established an attorney-client relationship with SkyBell. Now, the Orrick firm seeks to represent an adverse party against SkyBell in the same lawsuit. During meet-and-confer discussions preceding this motion, Orrick was unable to cite any California authority authorizing such blatant side switching, and SkyBell is aware of none. In such a circumstance, the law firm must be disqualified for the reasons discussed above.

Orrick presumably will attempt to analogize this case to that of a single attorney switching law firms, in which circumstance an ethical wall has been found appropriate in certain circumstances. For instance, *Kirk v. First American Title Ins.,* 183 Cal. App. 4th 776 (2010), the California Court of Appeal recognized:

> We do not doubt that vicarious disqualification is the general rule, and that we should presume knowledge is imputed to all members of a tainted attorney's law firm. However, we conclude that, in the proper circumstances, the presumption is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case.

*Kirk*, 183 Cal. App. 4th at 801.  Thus, the *Kirk* Court held "when a tainted attorney moves from one private law firm to another, the law gives rise to a rebuttable

14

presumption of imputed knowledge to the law firm, which may be rebutted by evidence of effective ethical screening." *Id.* at 814. *Kirk* goes on to note, however, that ethical walls can never be used in cases of an attorney switching sides in the same case: "***However, if the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive***." *Id.* (emphasis added).

In rendering its decision, the *Kirk* Court cited approvingly its earlier decisions in *Meza v. H. Muelhstein & Co.*, 176 Cal. App. 4th at 969, 977-79 (2009), and *Henriksen v. Great American Savings & Loan*, 11 Cal. App. 4th at 109, 114-15 (1992), the holdings of which disqualified law firms and recognized as ineffective ethical walls when an attorney possessing confidential information attempted to switch sides in the same case. *Kirk*, 183 Cal. App. 4th at 814. Indeed, the *Kirk* Court noted that *Henriksen* "set forth ***an absolute rule that ethical walls are not sufficient, and vicarious disqualification is mandatory***, when the tainted attorney . . . formerly represented, and therefor possesses confidential information from, a party" and "switches sides in the same case." *Kirk*, 183 Cal. App. 4th at 796 (emphasis added).

Here, Orrick attorneys, such as Mr. Jensen, received confidential information from SkyBell and formed an attorney-client relationship with SkyBell. Mr. Jensen unquestionably must be disqualified from participating in this lawsuit adverse to SkyBell, and Orrick concedes as much. Under clear California precedent (cited above), that disqualification also necessarily extends to the entire Orrick firm.

At the time of receiving SkyBell's confidences, Orrick had no wall of any kind in place to limit the dissemination of such information within the firm. The law discussed above presumes that such information was disclosed to all members of the firm at the time it was received. No California case endorses belatedly establishing an ethical wall as Orrick proposes here, because the information had already tainted every lawyer in the Orrick firm before the wall was ever erected. Essentially, Orrick

15

1    proposes to close the barn door long after all of the horses have already run out.

2            Orrick's purported ethical wall is essentially the inverse of those recognized

3    as possibly sufficient in non-side switching cases—Orrick is attempting to wall off

4    a large portion of its firm to allow for the representation of Ring. California has never

5    approved of such an inverse or backwards ethical wall. Further, because Orrick

6    previously represented SkyBell with respect to this lawsuit, any ethical wall is not

7    sufficient, and Orrick is deemed categorically disqualified, as a matter of California

8    law.  The "attorney" here is every *Orrick* lawyer, not the firm-switching Mr. Roberts,

9    so in effect Orrick is seeking to erect a wall around itself.

10           Indeed, the sheer magnitude of this purported ethical wall shows why is not

11   sufficient to protect SkyBell's confidential information. For more than six months

12   (October 2017–April 2018), there was no wall in place and SkyBell's confidential

13   information was allowed to be freely discussed throughout Orrick. Indeed, Orrick

14   recognizes that its wall extends to at least seven attorneys, in different offices, as

15   well as employees and directors of the marketing department, and financial analysts.

16   Fenster Decl., ¶ 4. The risks that SkyBell's confidential information, including its

17   settlement strategy, will be shared with Mr. Roberts and his team is simply too great

18   in these circumstances and cannot be protected the purported ethical wall.

19           Orrick's purported ethical wall is additionally problematic for the reason that

20   it has added attorneys to Mr. Roberts' team who were with Orrick at the time of Mr.

21   Jensen's discussions with SkyBell.  According to its website, both Ms. Caridis and

22   Mr. Chow have been with Orrick since at least January 1, 2017.  *See*

23   *https://www.orrick.com/News/2013/05/Orange-County-Team-Prevails-in-Unique-*

24   *Commercial-Landlord-Tenant-Case#* (last visited June 21, 2018) (an article from

25   May 21, 2013 noting Mr. Chow was part of a litigation team);

26   https://www.orrick.com/News/2017/01/Orrick-Welcomes-18-New-Partners   (last

27   visited June 21, 2018) (noting Ms. Caridis was named partner as of January 1, 2017).

28   As attorneys with Orrick during Mr. Jensen's representation of SkyBell, Mr. Chow

RUSS, AUGUST & KABAT

16

and Ms. Caridis are imputed with knowledge of SkyBell's confidential information and thus subject to vicarious disqualification. *Flatt*, 9 Cal.4th at 283 ("the disqualification extends vicariously to the entire firm"); *SpeeDee*, 20 Cal.4th at 1139 ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm."); *Trone*, 621 F.2d at 999 ("Once the attorney is found to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former client."). As Orrick attorneys at the time of SkyBell's attorney-client relationship with Orrick, Ms. Caridis and Mr. Chow are *SkyBell's* former attorneys for the purposes of this action against Ring. This shows the ephemeral nature of Orrick's purported ethical wall as Orrick has allowed attorneys imputed with SkyBell's confidential information to simply ignore and pass through it to provide assistance to Mr. Roberts.

### D.   THE RECENTLY APPROVED CHANGES TO THE CALIFORNIA RULES DO NOT REQUIRE OR JUSTIFY A DIFFERENT RESULT

Orrick claims that its ethical wall is permissible in light of a narrow exception approving of the use of ethical walls that is found in the recently approved (but not yet enacted) Rule 1.18 of the California Rules of Professional Conduct. Fenster Decl., Ex. B. This Rule provides as follows:

Rule 1.18 Duties to a Prospective Client

(a)   A person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity, is a prospective client.

(b)   Even when no lawyer-client relationship ensues, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Profession Code

17

RUSS, AUGUST & KABAT

section 6068, subdivision (e) and rule 1.6 that the lawyer learned as the result of the consultation, except as rule 1.9 would permit with respect to information of a former client.

(c)    A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of the prospective client in the same or a substantially related matter if the lawyer received from the prospective client information protected by Business and Profession Code section 6068, subdivision (e) and rule 1.6 that is material to the matter, except as provided in paragraph (d). If lawyer is prohibited from representation under this paragraph, no lawyer in a firm with which that lawyer was associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d)    When the lawyer has received information that prohibits representation as provided in paragraph (c), representation of the affected client is permissible if:

(1)    both the affected client and the prospective client have given informed written consent, or

(2)    ***the lawyer who received the information took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent the prospective client; and***

(i)    the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii)    written notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule.

18

RUSS, AUGUST & KABAT

Fenster Decl., Ex. B at 54-55 (emphasis added). This Rule fails to support Orrick's position.

As an initial matter, this rule is not even effective until November 1, 2018. *See id.* at 6. Accordingly, as of the date of this motion, California law still categorically precludes the use of an ethical wall in these circumstances for the reasons set forth above.

But even if the Rule is deemed to govern this case, Orrick's ethical wall is still ineffective and it should be disqualified. By its plain language, the Rule only applies where "the lawyer who received the information took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent the prospective client." The comments to the Rule further clarify the limited nature of this exception: "[i]n order to avoid acquiring information from a prospective client that would prohibit representation . . ., a lawyer considering whether or not to undertake a new matter ***must limit the initial interview to only such information as reasonably appears necessary for that purpose.***" *Id.* at 56 (emphasis added).

Here, Orrick's representation of SkyBell went far beyond the "initial interview" and the decision of "whether to represent the prospective client." Orrick crossed this benchmark on or about October 31, 2017, when it informed SkyBell that it had cleared conflicts. Scalisi Decl., ¶ 5. If nothing else, it passed this point no later than November 9, 2017, when it prepared the nearly 40-page Strategy Memo aimed at getting the case.[7] Based on the number of attorneys and departments that are now

---

[7] As Rule 1.18 is not yet effective, there is no California authority clearly defining when an attorney-client relationship has gone beyond the decision of "whether to represent the prospective client." Further, the out-of-state authority cited by Ring does not provide any clarity on this issue as discussed below. SkyBell contends that this line was crossed after the initial conflict check was cleared, and prior to the hour-long initial conference call. However, the line was definitely far exceeded in this case following the time that Orrick prepared the Strategy Memo and came to SkyBell's offices. At that point, Orrick had not only decided it wanted to represent SkyBell, it was actively petitioning for its business. In such

19

subject to Orrick's purported wall, this memo was plainly the result of team effort showing that SkyBell's information was spread throughout the firm. From the drafting of the memo onward, Orrick had decided that it wanted to represent SkyBell and it was trying to persuade SkyBell to use its services. In that regard, it engaged in a three hour in-person meeting after the "initial interview."

Further, Orrick took no "measures to avoid exposure to more information than was reasonably necessary to determine whether to represent SkyBell" as required by the rule. It placed no limitation on the information that was to be shared whatsoever. In fact, Orrick encouraged SkyBell to be as open as possible with information related to the potential lawsuit against Ring. Scalisi Decl., ¶ 15. Orrick received confidential information about SkyBell's settlement strategy, and tear-downs of the products that SkyBell believed to be infringing. *Id.* ¶¶ 7-8. None of this was necessary to decide whether to represent SkyBell. Indeed, Orrick received enough information to draft the Strategy Memo—showing its representation far exceed that contemplated by Rule 1.18, and involved far more personnel than a normal initial intake.

Thus, even if Rule 1.18 was effective and applied to this case, Orrick's representation is outside of the narrow exception recognized by the Rule.

## E.   ORRICK'S OUT-OF-DISTRICT LEGAL AUTHORITY PROVIDES NO SUPPORT FOR ITS CONTINUED REPRESENTATION OF RING

During the meet and confer, Orrick's counsel cited only the following two out-of-district cases as authority for its continued representation of Ring: (1) *The Vaccine Center, LLC v. Glaxosmithkline LLC*, No. 2:12-CV-01849-JCM-NJK, 2013 WL 1787176 (D. Nevada April 23, 2013; and (2) *Hollis v. Ogeneski*, No. NNHFA144063759S, 2014 WL 7589285 (Conn. Sup. Ct. Dec. 4, 2014). Both are readily distinguishable, and neither supports Orrick's position.

circumstance, SkyBell should feel free to share confidential information with Orrick without fear that it will later be used against it.

20

RUSS, AUGUST & KABAT

In *The Vaccine Center*, the Court denied a motion to disqualify Defendant's counsel who met with the Plaintiff about bringing the action prior to suit being filed, and where a timely ethical screen was established. *The Vaccine Center*, 2013 WL 1787176, at *1-*2. This case is both legally and factually distinguishable. *First*, the case was decided under Nevada law, and the District Court noted that a different result likely would have occurred if California law applied as "it appeared that California did not allow screening of any kind." *Id.* at *2, n.5. Further, in *The Vaccine Center* the lawyer warned the client that his law firm "[did] not typically handle cases on a contingency basis" and would analyze any materials provided by the client "to help him determine whether to make an exception." *Id.* at *2. Here, Orrick placed no such limitation on SkyBell and actively encouraged it to provide Orrick with all information related to the potential litigation. Scalisi Decl., ¶ 15. Further, as noted above, at least as of the date Orrick prepared the Strategy Memo and attended the in-person meeting at SkyBell's office, Orrick had decided it wanted to take the case. The fact it was still competing with other law firms for the engagement is irrelevant. Under the forthcoming rule change to California law an ethical wall is no longer effective after the decision to take the case has been made. Fenster Decl., Ex. B at 55-56, Rule 1.18(d)(2).

*Hollis*, a Connecticut Superior Court Case decided under Connecticut law, simply stands for the proposition already recognized in California that a law firm may in some circumstances avoid disqualification when a conflicted attorney joins its practice by establishing an appropriate wall around that attorney. *Hollis*, 2014 WL 7589285, at *5-*7. This case does not address the situation where the law firm, Orrick, indisputably had a preexisting conflict and is attempting to cleanse the conflict by walling off a large portion of its firm to allow other attorneys within the firm to switch sides in the matter (and to allow a new attorney to join with them in that representation).

1
2

In sum, Ring has failed to provide authority from any jurisdiction, and certainly none from California, approving of its purported ethical wall.

3
4

## IV.    CONCLUSION

5
6

For all of the foregoing reasons, Orrick should be disqualified from representing Ring in this matter.

7
8
9
10

Respectfully submitted,

Dated:  July 16, 2018

**RUSS AUGUST & KABAT**

By:   */s/ Paul A. Kroeger*

11
12
13
14

Marc A. Fenster, SBN 181067
Paul A. Kroeger, SBN 229074
12424 Wilshire Boulevard
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

15
16

*Attorneys for Plaintiff*
*SkyBell Technologies, Inc.*

17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

22

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2018, I electronically served the foregoing **PLAINTIFF SKYBELL TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLC** via email upon all counsel of record.

*/s/ Paul A. Kroeger*

RUSS, AUGUST & KABAT

MOTION TO DISQUALIFY