RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Brian D. Ledahl, SBN 186579
bledahl@raklaw.com
Paul Kroeger, SBN 229074
pkroeger@raklaw.com
Twelfth Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff
SKYBELL TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| SKYBELL TECHNOLOGIES, INC., <br><br> Plaintiff <br><br> v. <br><br> RING, INC. <br><br> Defendant. | **Case No. 8:18-CV-00014-JVS-JDE** <br><br> **PLAINTIFF SKYBELL TECHNOLOGIES, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLP** <br><br> **Hearing:** <br> Date: September 10, 2018 <br> Time: 1:30 p.m. <br> Place: Courtroom 10C <br> Judge: Hon. James V. Selna |

SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

## I. INTRODUCTION

SkyBell's Motion to Disqualify the Orrick firm was fully briefed by August 27. On September 7, this Court issued a lengthy tentative ruling granting the motion. Then, Orrick appeared at the September 10 hearing on the motion with a new declaration from Orrick attorney Travis Jensen, who had already submitted a declaration with Orrick's opposition to the motion. The Supplemental Jensen Declaration was untimely. Even if it had been timely submitted, however, the Supplemental Declaration does not support a change in the Court's tentative ruling.

The Court's tentative ruling found that Orrick failed to take reasonable measures to avoid exposure to more confidential information from SkyBell than was reasonably necessary to determine whether to represent it. This precluded Orrick's reliance on New Rule of Professional Conduct 1.18 to avoid disqualification. The new Jensen Declaration purports to identify two measures that Orrick took. None of them change the result. First, the two statements Mr. Jensen references is his declaration were not cautions to limit disclosure of confidential information once Orrick had confirmed it had no present conflict of interest. Second, even if these statements were somehow cautionary, New Rule 1.18 involves limiting disclosures received to those necessary to determine whether to represent the prospective client. Orrick continued to request and receive additional confidential information from SkyBell even after Orrick determined it would represent SkyBell, as reflected in a written proposal to do so. Thus, under either New Rule 1.18 or the pre-existing Rules of Professional Conduct, Orrick must be disqualified in this matter.

## II. ORRICK'S NEW DECLARATION IS UNTIMELY

In its motion, Skybell specifically highlighted the provision of New Rule 1.18 noting that "Orrick took no 'measures to avoid exposure to more information than was reasonably necessary to determine whether to represent SkyBell as required by the rule." Dkt. # 48 at 17-20. Prior to bringing its motion, SkyBell had multiple meet and confers with Orrick. Counsel for SkyBell specifically asked Orrick

1

whether it had any evidence of "reasonable measures" taken, and Orrick confirmed that it had no evidence of any such measures, but instead provided arguments for why such measures were not necessary. Fenster Decl., Ex. C. Then, in its Opposition, and in the ten accompanying declarations (including of Mr. Jensen), Orrick never identified any such measures. Indeed, SkyBell submitted a declaration from Joseph Scalisi, testifying about the extensive confidential information shared with Orrick, and that "[d]uring our communication with Orrick, we were never informed that we should withhold any information concerning our planned lawsuit until it had decided to take the case. Indeed, we were encouraged to provide all of the information we had, and we complied where possible." Dkt. # 48-2 at ¶ 15.

Orrick suggests that the Supplemental Jensen declaration goes to the issue of whether Orrick took "reasonable measures" to avoid exposure to more confidential information than necessary, as required by New Rule 1.18. Orrick was obliged to provide such evidence so not later than twenty-one days before the hearing. L.R. 7-9. Pursuant to an agreed briefing schedule, Orrick had four weeks to file its opposition. Orrick had access to Mr. Jensen, and he submitted a declaration with Orrick's opposition, but, consistent with the representations made during the meet and confers, that declaration made no mention of any measures of any kind to avoid exposure to any confidential information. Pursuant to Local Rule 7-12, the Court is free to decline to consider Orrick's supplemental declaration as untimely.

### III. ORRICK SOUGHT AND RECEIVED SKYBELL CONFIDENCES WITHOUT WARNING SKYBELL TO LIMIT DISCLOSURE

#### A. Orrick Gave No Admonitions After Clearing A Conflicts Check

The Supplemental Jensen Declaration identifies two statements that Orrick appears to argue constitute "reasonable measures." First, Mr. Jensen avers that before running an initial conflict check he told SkyBell's outside patent counsel that

he should limit the information provided to that needed to run the conflicts check. Supp. Decl., ¶ 4. In his original declaration, Mr. Jensen stated that he immediately ran that conflict check and confirmed that no conflicts existed that would preclude the proposed representation." Dkt. # 55-1, ¶ 3.

Mr. Jensen promptly informed SkyBell by email on October 31, 2017 that Orrick had no conflicts. Dkt. # 48-2, ¶ 5. Then, on November 1, 2017, both Mr. Scalisi and Mr. Jensen declare that Mr. Jensen conducted a telephone conference of about one hour with SkyBell about the potential representation. Scalisi Decl. (Dkt. #48-2) at ¶ 6; Jensen Decl. (Dkt. #55-1) at ¶ 4. During that call, Mr. Scalisi declared that he shared extensive various confidential information from SkyBell. Dkt. #48-2, ¶ 7. Mr. Jensen never disputed this fact.

In his new declaration, Mr. Jensen states that at some unspecified time "[i]n ensuing discussions," he "informed SkyBell's outside patent counsel that Orrick rarely (if ever) takes cases on a full contingency basis although it does sometimes agree to a partial contingency arrangement." Supp. Jensen Decl. at 6. Mr. Jensen never suggests that he told SkyBell or its counsel that it should limit its disclosures to Orrick because of this fact. Further, Mr. Jensen never suggests that SkyBell indicated it would only retain Orrick on a contingency fee basis. In fact, "SkyBell inquired about multiple possible fee arrangements, including hourly fee proposals and potential alternative fee arrangements." Supp. Scalisi Decl. ¶ 4. SkyBell "never asserted that any particular type of fee proposal was necessary in order for SkyBell to accept representation from Orrick." *Id.*

Mr. Jensen never states in his supplemental declaration that at any time after clearing initial conflicts checks on October 31, 2017, he ever told any SkyBell representative that they should, in any way, limit the information that they shared with Orrick, or that Orrick was somehow reserving the right to represent an adverse party against SkyBell in the same matter.

3

SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

### B. Orrick Sought And Received SkyBell Confidences Even After Confirming It Would Accept The Representation

Mr. Jensen declares that around the time of the November 1, 2017 call, SkyBell asked Orrick to prepare a written proposal for Orrick to represent SkyBell. Dkt. # 55-1, ¶ 5. Mr. Jensen confirms that he sent the proposal to SkyBell on November 8, 2017. *Id.* at ¶ 7-17. This November 8 proposal contained an alternative fee arrangement proposal from Orrick. *Id.* at ¶13. It was the only fee proposal Orrick ever made to SkyBell. Supp. Scalisi Decl., ¶ 5. Thus, Orrick completed whatever evaluation it believed necessary to determine whether it could offer an alternative fee proposal to SkyBell by no later than November 8, 2017.

Mr. Jensen admits he visited SkyBell <u>after</u> Orrick determined what fee proposal it would offer to SkyBell (and that it was willing to represent SkyBell pursuant to such an arrangement). Dkt. # 55-1, ¶ 17. As Mr. Scalisi confirms, during this three-hour long meeting, SkyBell and Orrick "had further discussions of each of the topics from our previous call, among other things, and discussed them in greater detail than we did on November 1, 2017." Supp. Scalisi Decl., ¶ 7. During that meeting (after Orrick's fee proposal), SkyBell also demonstrated tear-downs of various products it believed to be infringing, including some Ring products. At Mr. Jensen's request, he took those products with him after the meeting. *Id.*, ¶ 8.

Mr. Scalisi indicated in his original declaration that at no time did Orrick inform SkyBell that it should withhold any information, and that Orrick encouraged SkyBell to provide all of the information it had. Dkt. # 48-2, ¶ 15. In light of Mr. Jensen's new supplemental declaration, Mr. Scalisi clarifies that neither before, nor after, receiving Orrick's fee proposal did Orrick ever caution SkyBell to limit the information it provided, or that SkyBell's inquiry about possible alternative fee arrangement somehow required disclosure of different (or limited) information because Orrick might not accept the representation. Scalisi Supp. Decl., ¶ 9. Instead,

even after providing Orrick's fee proposal, Mr. Jensen met with SkyBell and encouraged it to share further confidential information. *Id.*

## IV. ORRICK'S NEW DECLARATION FAILS TO SHOW REASONABLE MEASURES

This Court found in its tentative ruling that, for purposes of New Rule of Professional Conduct 1.18, SkyBell was a prospective client of Orrick and that Orrick received confidential information from SkyBell material to this matter. Under New Rule 1.18(c), this disqualifies Orrick from representing another client adverse to SkyBell in this matter unless the exceptions of New Rule 1.18(d) apply. Orrick relies on the second exception of New Rule 1.18(d), which provides that a law firm may represent a client adverse to a former prospective client like SkyBell only if "the lawyer wo received the information took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent the prospective client." Orrick failed to offer any evidence to show that it satisfied this standard in its Opposition. It purports to rely on the Supplemental Jensen Declaration to now satisfy that standard, but that reliance is unavailing.

### A. Neither Jensen Statement Constitutes A Reasonable Measure

The Supplemental Jensen Declaration references two statements. Neither constitute any kind of meaningful warning about limiting the disclosure of confidential information. Mr. Jensen's first supposed warning was to request only the identity of potential parties for a conflicts check before that check had been run. That warning clearly expired when Mr. Jensen communicated that Orrick had no conflicts. Mr. Jensen never disputes that he sought and obtained confidential information from SkyBell after informing it that Orrick had no conflicts.

The second statement relied on by Orrick is no warning at all. Orrick merely stated that it might not offer one particular type of fee arrangement. Mr. Jensen never suggests that this was accompanied by any admonition to limit the information

disclosed to Orrick, or that Orrick was reserving the right to later represent a client against SkyBell in the same matter, or even that Orrick might not accept the matter. SkyBell never suggested that it would only retain Orrick if Orrick would agree to accept the matter on a contingency basis. Supp. Scalisi Decl., ¶ 4.

### B. None Of The Cases Cited By Orrick Support Its Position

Orrick seems to rely on language from the Nevada *Vaccine Center* case discussed in the briefs. *Vaccine Center, LLC v. Glaxosmithkline LLC*, 2013 WL 1787176 (D. Nev. Apr. 25, 2013). But there, the lawyer made clear to the prospective client that he would not usually accept the proposed representation, but was willing to review materials "to help him determine whether to make an exception." That is qualitatively different than the supposed warning given by Orrick, which never suggested that it might be unwilling to accept the representation. Further, *Vaccine Center* did not involve a lawyer who, after expressing willingness to take the matter, continued to actively solicit further confidential information from the prospective client as Mr. Jensen did here.

None of Orrick's other cases offer any further support. The *Beckenstein* case involved an attorney who had a less than 30 minute call with the prospective client and terminated the discussion immediately when the prospective client revealed an additional adverse party with which the lawyer had a conflict, but that had not been identified initially. *Beckenstein Enterprises-Prestige Park, LLC v. Lichtenstein*, 2004 WL 1966863, *2 (Conn. Aug. 11, 2004). The *Hollis* case does not analyze reasonable measures and does not suggest that disqualification was required under the Connecticut analog to New Rule 1.18(c). *Hollis v. Ogenski*, 2014 WL 7589285, at *7 (Conn. Super. Ct. Dec. 4, 2014). In *Jimenez*, the prospective client had no more than a few minutes conversation with the lawyer before the lawyer was able to determine that the firm had a conflict and advised the prospective client the firm would not accept the matter. *Jimenez v. Rivermark Cmty. Credit Union*, 2015 WL 2239669, at *6-7 (D. Or. May 12, 2015). Finally, in *Tawnsaura* the Court (applying

6

older California rules, not the New Rules) concluded that 1) the prospective client failed identify the potential adverse party that created the conflict, 2) the alleged confidences were shared before conflicts were cleared, and 3) the prospective client discussed a different matter (against a different potential defendant) than the matter in which disqualification was sought. *Tawnsaura Group LLC v. Threshold Enterprises Ltd.*, 2012 WL 12892439, at *6-9 (C.D. Cal. Dec. 26, 2012).

None of these cases considered the type of non-admonitions referenced by the Supplemental Jensen Declaration. Further, none of them considered a situation where the prospective law firm agreed to take the proposed representation, provided a complete fee proposal, and continued to solicit and receive confidential information after providing such a proposal. Neither Rule 1.18, nor any of Orrick's cases supports any result but disqualification here.

## V.   ORRICK'S PROPOSALS REGARDING DISQUALIFICATION

The Court's tentative ruling would disqualify the Orrick firm in this case, and nothing in Orrick's supplemental declaration warrants another result. At the hearing on this motion, Orrick requested two concessions if the Court entered such a ruling.

First, Orrick requested that it be able to transfer any work-product for this case to any successor firm retained to represent Ring. Ordinarily, it would be inappropriate for disqualified lawyers to transfer their work-product to successor counsel. Here, SkyBell respectfully submits that it would be appropriate for work product in this case from the Durie Tangrie firm (where Ring's counsel worked before joining Orrick) to be shared, but nothing generated by Orrick should be provided. Since the only substantive issue since Mr. Roberts joined the Orrick firm has been this disqualification issue, that should not present any hardship to Ring.

Second, Orrick requested a thirty-day stay of proceedings following any ruling disqualifying Orrick, in order for Ring to retain new counsel, followed by a status conference involving new counsel for Ring. SkyBell has no objection to this request.

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | Dated:  September 17, 2018 | **RUSS AUGUST & KABAT** |
| 3 | | By:   */s/ Paul A. Kroeger* |
| 4 | | |
| 5 | | Marc A. Fenster, SBN 181067<br>Brian D. Ledahl, SBN 186579<br>Paul A. Kroeger, SBN 229074<br>12424 Wilshire Boulevard<br>Twelfth Floor<br>Los Angeles, California 90025<br>Telephone: (310) 826-7474<br>Facsimile: (310) 826-6991 |

*Attorneys for Plaintiff*
*SkyBell Technologies, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2018, I electronically served the foregoing **PLAINTIFF SKYBELL TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISQUALIFY ORRICK, HERRINGTON & SUTCLIFFE LLC** via email upon all counsel of record.

/s/ *Paul A. Kroeger*
Paul A. Kroeger