UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

Present: The Honorable    James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:    (IN CHAMBERS)  Order Granting Plaintiff's Motion to Disqualify
and Setting Status Conference**

Plaintiff SkyBell Technologies, Inc. ("SkyBell") filed a motion to disqualify third-party Orrick, Herrington & Sutcliffe ("Orrick") from any further representation of Defendant Ring, Inc. ("Ring").  (Mot., Docket No. 48.)  Orrick opposed the motion. (Opp'n, Docket No. 53.)  Ring joined in the opposition.  (Joinder, Docket No. 54.) SkyBell replied.  (Reply, Docket No. 57.)

For the following reasons, the Court **grants** the motion to disqualify.

## I. BACKGROUND

### A.    SkyBell Conducts a "Beauty Contest"

SkyBell is in the business of manufacturing and selling smart video doorbells. (Declaration of Joseph F. Scalisi ("Scalisi Decl."), Docket No. 48-2 ¶ 2.)  In mid-2017, SkyBell decided to research the possibility of enforcing its patent portfolio against its various competitors, including Ring.  (Id. ¶ 4.)

In October 2017, SkyBell approached Travis Jensen ("Jensen"), a partner in Orrick's Silicon Valley office, about potentially representing it in such litigation.  (Id. ¶ 5; Declaration of Travis Jensen ("Jensen Decl."), Docket No. 53-1 ¶ 2.)  Jensen immediately requested that a conflicts check be run against the Orrick conflicts database, and he determined that no conflict existed in a potential representation of SkyBell in patent litigation.  (Jensen Decl., Docket No. 53-1 ¶ 3.)
In his supplemental declaration supplemental submitted the day of the hearing, Jensen

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |

| | |
|---|---|
| Title | Skybell Technologies, Inc. v. Ring, Inc. |

asserts that he told SkyBell's outside patent counsel to provide him no more information than necessary to conduct a conflicts search.[1] (Jensen Supp. Decl. ¶ 4.) In his supplemental declaration submitted the day of the  hearing, Jensen asserts that he told SkyBell's outside patent counsel to provide him no more information than necessary to conduct a conflicts search.[2] (Jensen Supp. Decl. ¶ 4.)

After advising SkyBell of the absence of conflicts, Jensen had an introductory call with Joseph Scalisi ("Scalisi"), SkyBell's Chief Executive Officer, Robert Mahan ("Mahan"), SkyBell's Chief Financial Officer, and two of SkyBell's outside patent attorneys on November 1, 2017. (Id. ¶ 4; Scalisi Decl., Docket No. 48-2 ¶ 6.)  The call lasted approximately one hour, and the following five topics were discussed: (1) the key patents to be enforced against Ring; (2) the reasons SkyBell believed Ring to be infringing; (3) issues concerning validity and the prior art; (4) SkyBell's financial position; and (5) settlement strategy. (Scalisi Decl., Docket No. 48-2 ¶ 7.)  Following the call, SkyBell sent Jensen various materials, including tear-downs of the Ring products SkyBell believed to be infringing. (Id. ¶ 8.)

Around the time of the initial November 1, 2017 call, SkyBell asked Jensen to prepare a written proposal for Orrick to represent SkyBell in an action to enforce SkyBell's patents against one or more possible defendants. (Jensen Decl., Docket No. 53-1 ¶ 5.)  According to Jensen, he understood that Orrick was bidding against other firms in a competitive pitch process or "beauty contest," and that SkyBell would evaluate Orrick's proposal along with proposals from multiple other law firms in order to determine which firm to retain. (Id.)  Jensen also understood that the fee arrangement

---

[1]Significantly, in his original declaration,  Jensen did not refer to this cautionary discussion with an unnamed lawyer on an unspecified date.  The declaration came only after the Court issued its tentative which in large part turned on whether Orrick had taken "reasonable measures to avoid exposure to more information than was reasonably."  (California Rule of Professional Conduct 1.18(d)(2).)

[2]Significantly, in his original declaration,  Jensen did not refer to this cautionary discussion with an unnamed lawyer on an unspecified date.  The declaration came only after the Court issued its tentative which in large part turned on whether Orrick had taken "reasonable measures to avoid exposure to more information than was reasonably."  (California Rule of Professional Conduct 1.18(d)(2).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|----------|--------------------------|------|---------------------|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|-------|-------------------------------------------|

would be a competitive aspect of the bidding process, and that Orrick would have to be creative in its fee proposal to win the pitch. (Id.) Jensen and an associate in Orrick's New York office, Tyler Miller ("Miller"), prepared a nearly 40-page proposal and enforcement strategy document (the "Written Proposal") to represent SkyBell. (Id. ¶¶ 6–7; Scalisi Decl., Docket No. 48-2, Ex. A.)

Included in the Written Proposal is a 12-page section regarding Orrick's strategic analysis and recommendations for SkyBell's patent enforcement campaign. (Scalisi Decl., Docket No. 48-2, Ex. A at 12–23.) Four of these pages specifically address Orrick's recommendations and proposed strategy for enforcement against Ring. (Id. at 16–19.) There are also separate sections detailing Orrick's understanding of SkyBell's strategic business objectives and current goals for its patent enforcement campaign, SkyBell's patent portfolio, the possible venue options, and the economics and players in the video doorbell market. (Id. at 5–10.) Additionally, three pages include Orrick's fee proposal and budget. (Id. at 31–33.) Finally, the remaining pages include general background information on Orrick's Intellectual Property Group, biographies of the proposed team, venue statistics, an executive summary, a table of contents, and heading pages separating the sections. (Id. at 1–4, 11, 24–30, 34–37.) The Written Proposal identifies three potential Orrick attorneys to work on the matter: Jensen, Miller, and Johannes Hsu in Orrick's Orange County office, and around November 13, 2017, Jensen also identified Chris Ottenweller in Orrick's Silicon Valley office as a possible team member. (Jensen Decl., Docket No. 53-1 ¶ 15.) Each page of the Written Proposal is labeled privileged and confidential. (Scalisi Decl., Docket No. 48-2, Ex. A.)

Jensen sent the Written Proposal to Scalisi on November 8, 2017, and the next day, he met with Scalisi, Mahan, and one or more of SkyBell's outside patent attorneys at SkyBell's office in Irvine, California. (Id. ¶ 17; Scalisi Decl., Docket No. 48-2 ¶¶ 9–10.) The meeting lasted approximately three hours, and during the meeting, Jensen explained Orrick's proposed strategy and budget, discussed the five topics identified above, and answered questions from SkyBell's representatives. (Scalisi Decl., Docket No. 48-2 ¶¶ 9, 11; Jensen Decl., Docket No. 53-1 ¶ 17.) Following the meeting, Jensen sent SkyBell a proposed written engagement letter, which SkyBell never signed. (Jensen Decl., Docket No. 53-1 ¶ 18.)

Ultimately, SkyBell decided not to retain Orrick and selected another law firm to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |

| | |
|---|---|
| Title | Skybell Technologies, Inc. v. Ring, Inc. |

represent it.  (Id. ¶ 19.)  However, SkyBell and Orrick continued to have discussions about Orrick potentially representing SkyBell in IPR challenges or acting as shadow counsel.  (Scalisi Decl., Docket No. 48-2 ¶ 13.)  On January 5, 2018, SkyBell filed the instant patent infringement action against Ring.  (Compl., Docket No. 1.)  SkyBell alleges that it is the sole owner of U.S. Patent Nos. 9,055,202; 9,179,109; 9,179,107; 9,743,049; and 9,160,987 (the "patents-in-suit"), and that various Ring products and services infringe the patents-in-suit.  (First Amended Complaint ("FAC"), Docket No. 27 ¶¶ 4, 16–36.)  After the case was filed, Jensen emailed Scalisi noting its filing, and as recently as March 2018, Jensen sent Scalisi emails related to the case, including patent cases that might be of relevance.  (Scalisi Decl., Docket No. 48-2 ¶¶ 13–14.)

**B.     Clement Roberts Joins Orrick**

Ring retained Clement Roberts ("Roberts") to represent it in the instant action on January 5, 2018.  (Declaration of Clement S. Roberts ("Roberts Decl."), Docket No. 54-2 ¶ 1.)  At that time, Roberts was a partner at Durie Tangri, LLP.  (Id.)  According to Ring's founder and Chief Executive Officer, Jamie Siminoff, Roberts was chosen because of his longstanding and close relationship with Ring.  (Declaration of Jamie Siminoff ("Siminoff Decl."), Docket No. 54-1 ¶¶ 1–4.)  For the first five months after being retained, Roberts and his team spent more than 1,500 hours working on the matter. (Roberts Decl., Docket No. 54-2 ¶ 2.)  This work included, among other things, drafting an answer and counterclaims, as well as conducting multiple settlement discussions with SkyBell's counsel.  (Id. ¶ 2; Answer, Docket No. 33.)

On June 1, 2018, Roberts joined Orrick's San Francisco office.  (Declaration of Larry Low ("Low Decl."), Docket No. 53-2 ¶ 15.)  The next business day, Roberts notified SkyBell's counsel that he had joined Orrick.  (Declaration of Marc C. Fenster ("Fenster Decl."), Docket No. 48-1, Ex. C at 16–17 (pagination per docket).)  Roberts also notified SkyBell's counsel that Orrick had implemented an ethical screen prior to him joining the firm, and provided details of the screen.  (Id. at 15.)

**C.     Orrick's Ethical Screen**

On May 30, 2018, after Roberts informed Orrick of his decision to join the firm, but before he joined, Orrick implemented an ethical screen to ensure that any attorney or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
| Title | Skybell Technologies, Inc. v. Ring, Inc. | | |

staff member who was involved in the pitch to SkyBell (the "SkyBell Screened Group")
was screened from any attorney or staff member who would be working on the Ring
litigation (the "Ring Litigation Group"). (Low Decl., Docket No. 53-2 ¶¶ 7–16.)  The
SkyBell Screened Group includes: two attorneys substantively involved in preparing the
Written Proposal, one marketing director who helped assemble and format the Proposal,
five management personnel who reviewed and approved the Proposal and alternative fee
budget, and four attorneys who received the Proposal or had discussions with Jensen.
(Id. ¶ 14.)  The Ring Litigation Group includes Roberts and five other Orrick attorneys.
(Id. ¶ 15.)  At least two of the attorneys in the Ring Litigation Group worked at Orrick at
the time of the pitch.  (Mot., Docket No. 48 at 7.)

The ethical screen implemented by Orrick consists of the following:

1. A prohibition on members of the SkyBell Screened
Group from working on the Ring patent litigation;

2. A prohibition on members of the SkyBell Screened
Group and the Ring Litigation Group
communicating about either the pitch or the
litigation, and a special caution to avoid such
communication at firm events, meetings, or other
gatherings;

3. A prohibition on members of each group possessing
or reading materials from the other group relating to
the pitch or the litigation;

4. A plan for periodic reminders; and

5. A requirement that any exception to the rules must
be authorized by the Risk and Compliance counsel
(no exceptions have been made to date and there are
no planned exceptions), and a plan for updating the
screened groups as necessary.

(Opp'n, Docket No. 53 at 7–8; Low Decl., Docket No. 53-2 ¶ 13; Fenster Decl.,
Docket No. 48-1, Ex. C at 15 (pagination per docket).)  Additionally, Orrick gathered
and quarantined all correspondence and documents related to the pitch from the
SkyBell Screened Group and placed them in a restricted cabinet on Orrick's network,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

which can be viewed by only five attorneys at Orrick in the Risk and Compliance department and two attorneys working on the opposition brief to the instant motion. (Low Decl., Docket No. 53-2 ¶¶ 9–12; Opp'n, Docket No. 53 at 8.)

Immediately upon joining Orrick, Roberts was made part of the screen, as were the other five Orrick attorneys in the Ring Litigation Group immediately upon joining the case. (Low Decl., Docket No. 53-2 ¶ 15.) Each member of the Ring Litigation Group submitted a declaration stating that they were not involved in the pitch to SkyBell, that they have not received information from the SkyBell Screened Group, and that they do not work in the same office as Jensen. (Roberts Decl., Docket No. 54-2 ¶ 3; Declaration of Alyssa Cardis ("Cardis Decl."), Docket No. 54-3 ¶¶ 3–4; Declaration of Don Daybell ("Daybell Decl."), Docket No. 54-4 ¶¶ 3–4; Declaration of Michael C. Chow ("Chow Decl."), Docket No. 54-5 ¶¶ 3–4; Declaration of Joong Youn Cho ("Cho Decl."), Docket No. 54-6 ¶¶ 3–4; Declaration of Andrew J. Kim ("Kim Decl."), Docket No. 54-7 ¶¶ 3–4.) Additionally, none of the members of the SkyBell Screened Group are being apportioned any part of the fees from the Ring litigation matter. (Low Decl., Docket No. 53-2 ¶ 16.)

## II. LEGAL STANDARD

In a patent case, attorney disqualification is a procedural issue governed by the law of the regional circuit. In re Shared Memory Graphics LLC, 659 F.3d 1336, 1340–41 (Fed. Cir. 2011). In the Ninth Circuit, state law governs motions to disqualify. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009) ("By virtue of the district court's local rules, California law controls whether an ethical violation occurred."); see also In re Cty. of L.A., 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."). The Central District applies the California State Bar Act, the California Rules of Professional Conduct, and related judicial decisions in assessing the standards of professional conduct. See C.D. Cal. L.R. 83-3.1.2.

The decision to disqualify counsel is within the trial court's discretion and limited by applicable legal principles. See Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980); People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

4th 1135, 1143–44 (1999).  Due to the potential for abuse, motions to disqualify are subject to strict judicial scrutiny.  Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985).  A court should examine the implications of disqualification, including "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion."  SpeeDee Oil, 20 Cal. 4th at 1145.

## III. DISCUSSION

### A.    The New California Rules of Professional Conduct

On March 30, 2017, the Board of Trustees of the State Bar of California filed a request for approval of comprehensive amendments to the California Rules of Professional Conduct with the California Supreme Court.[3]  On May 10, 2018, the Supreme Court issued Administrative Order 2018-05-09, S240991, approving 69 new and amended rules.  The Board of Trustees adopted the new and amended rules after a comprehensive review process and public comment period.  The new version of the Rules of Professional Conduct approved by the Supreme Court officially goes into effect on November 1, 2018.

The new version of the California Rules of Professional Conduct differs from the old version of the Rules in several major respects.  Relevant to the present motion, the new version contains a rule with no corresponding prior counterpart, Rule 1.18, regarding duties to prospective clients.[4]  The old version of the Rules is silent with regards to duties owed to prospective clients, and instead contains Rule 3-310, which concerns avoiding the representation of adverse interests to both current and former

---

[3] Information regarding the adoption of the new California Rules of Professional Conduct is available at http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Ethics/Committees/Rules-Revision/Rules-Commission-2014/Proposed-Rules.

[4] A cross-reference chart of the old version of the California Rules to the new Rules is available at http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/New-Rules-of-Professional-Conduct.  The cross-reference chart indicates that Rule 1.18, Duties to Prospective Client, has no counterpart in the old version of the Rules.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-00014 JVS (JDEx)                    Date   September 18, 2018

Title      Skybell Technologies, Inc. v. Ring, Inc.

clients.

SkyBell and Orrick dispute which version of the California Rules of
Professional Conduct should apply.  SkyBell argues that the new version of the Rules,
specifically Rule 1.18, should not apply because the new Rules do not go into effect
until November 1, 2018, and were not in effect at the time Orrick obtained SkyBell's
confidential information or when the conflict of interest arose.  (Mot., Docket No. 48
at 19; Reply, Docket No. 57 at 9.)  In contrast, Orrick argues that it is simply an
administrative matter for the State Bar that the new Rules do not officially go into
effect until November 1, 2018, and that there is no existing contingency that will
prevent their implementation.  (Opp'n, Docket No. 53 at 11.)  Orrick argues that the
new Rules will inevitably go into effect fewer than sixty days from the date of the
hearing on this motion.  (Id.)  Additionally, Orrick argues that there is no dispute
about how the California Supreme Court feels about the ethical issue underlying the
motion, regarding a firm undertaking a representation adverse to a former prospective
client, because the Court told us in May when it approved the new version of the
California Rules of Professional Conduct.  (Id. at 11–12.)

As stated above, California law governs motions to disqualify.  See Rodriguez,
563 F.3d at 967.  Because the Court must apply California law in determining matters
of disqualification, the Court "must follow the reasoned view of the [California]
[S]upreme [C]ourt when it has spoken on the issue."  In re Cty. of L.A., 223 F.3d at
995.  While there is no California case law discussing the newly approved Rule 1.18,
the Court deems the Supreme Court's approval of the new Rule as the best indicator of
the California Supreme Court's position on the ethical issue.  Therefore, even though
the new version of the Rules is not technically in effect, the California Supreme Court
has made clear that the new Rules are the correct ethical standard and most in line
with current judicial thinking on matters of attorney ethics.  Accordingly, the Court
analyzes the present motion under the new California Rules of Professional Conduct,
which includes the new Rule 1.18.

**B.      Application of New California Rule of Professional Conduct 1.18**

Rule 1.18 of the new California Rules of Professional Conduct sets forth the
duties owed to a prospective client.  The Rule provides:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-00014 JVS (JDEx)                Date   September 18, 2018

Title   Skybell Technologies, Inc. v. Ring, Inc.

(a) A person\*[5] who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity, is a prospective client.

(b) Even when no lawyer-client relationship ensues, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that the lawyer learned as a result of the consultation, except as rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received from the prospective client information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that is material to the matter, except as provided in paragraph (d). If a lawyer is prohibited from representation under this paragraph, no lawyer in a firm\* with which that lawyer is associated may knowingly\* undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received information that prohibits representation as provided in paragraph (c), representation of the affected client is permissible if:

(1) both the affected client and the prospective client have given informed written consent,\* or

---

[5] An asterisk (\*) identifies a word or phrase defined in the new terminology rule, Rule 1.0.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |

| | |
|---|---|
| Title | Skybell Technologies, Inc. v. Ring, Inc. |

(2) the lawyer who received the information took reasonable* measures to avoid exposure to more information than was reasonably*[6] necessary to determine whether to represent the prospective client; and

(i) the prohibited lawyer is timely screened* from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) written* notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule.

1.      SkyBell Is a Prospective Client

As an initial matter, SkyBell is a prospective client within the meaning of Rule 1.18(a).  SkyBell, through its authorized representatives Scalisi, Mahan, and the two outside patent attorneys, consulted Jensen as part of the beauty contest for the purpose of determining whether to retain Orrick to represent it in patent litigation.  (Scalisi Decl., Docket No. 48-2 ¶¶ 6, 9; Jensen Decl., Docket No. 53-1 ¶¶ 4, 17.)

2.      Orrick Received Confidential Information Material to the Matter

Orrick does not dispute that during the November 1, 2017 phone call, and November 9, 2018 meeting the following confidential information was disclosed and discussed: (1) the key patents to be enforced against Ring; (2) the reasons SkyBell believed Ring to be infringing; (3) issues concerning validity and the prior art; (4) SkyBell's financial position; and (5) settlement strategy.  (Scalisi Decl., Docket No. 48-2 ¶¶ 7, 11; Opp'n, Docket No. 53 at 16.)  Instead, Orrick argues that these were not "material" disclosures, and that most of the information is already public.  (Opp'n,

---

      [6] "'Reasonable' or 'reasonably' when used in relation to conduct by a lawyer means the conduct of a reasonably prudent and competent lawyer."  Cal. R. Prof. Conduct § 1.0.1(h) (new version).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

Docket No. 53 at 16.)  Orrick argues that because SkyBell has already filed suit and served its infringement contentions, it has already disclosed the key patents to be enforced against Ring and the reasons SkyBell believes Ring to be infringing.  (Id.) Orrick also argues that the prior art is public in nature and therefore not confidential. (Id.)  Additionally, Orrick argues that SkyBell's financial position will be the subject of discovery in this case and likewise is not confidential under the circumstances. (Id.)  Further, Orrick suggests that information regarding SkyBell's settlement strategy is not material because the parties have already engaged in settlement discussions, but assumes, for purposes of the motion, that SkyBell's settlement strategy is material. (Id. at 16–17.)

It is clear that Orrick received confidential information from SkyBell within the meaning of Cal. Bus. & Prof. Code § 6068(e)(1)[7] and new California Rule of Professional Conduct 1.6,[8] and Orrick concedes this fact in the opposition.  (Opp'n, Docket No. 53 at 16–17.)  While Orrick argues that most of this information is already public or will be discoverable in this case, Comment [5] to new Rule 1.9, regarding duties to former clients, makes clear that "[t]he fact that information can be discovered in a public record does not, by itself, render that information generally known[.]" Therefore, the fact that some of this information is publicly available in court filings does not change the fact that it was all information that Orrick acquired by virtue of its discussions with SkyBell regarding the potential representation.  Nor does it matter that some of this information was already served as part of SkyBell's infringement contentions or may be discoverable because this does not strip it of its confidential nature at the time the information was divulged.  Furthermore, Orrick's argument that this information is not material to the matter is inconsistent with its position, discussed below, that this same information was reasonably necessary for it to determine whether to represent SkyBell in this matter.  Therefore, pursuant to new Rule 1.18(c),

---

[7] "It is the duty of an attorney to . . . maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."  Cal. Bus. & Prof. Code § 6068(e)(1).

[8] Comment [2] to new Rule 1.6, regarding confidential information of a client, provides that "[t]he principle of lawyer-client confidentiality applies to information a lawyer acquires by virtue of the representation, whatever its source, and encompasses matters communicated in confidence by the client, and therefore protected by the lawyer-client privilege, matters protected by the work product doctrine, and matters protected under ethical standards of confidentiality[.]"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

Orrick may not represent a client with interests materially adverse to SkyBell in the same matter,[9] given that Orrick received confidential information from SkyBell that is material to the matter, unless it qualifies for one of the exceptions set forth in subsection (d).

> 3.    Orrick Did Not Take Reasonable Measures to Avoid Exposure to More Information than Was Reasonably Necessary to Determine Whether to Represent SkyBell

The exception set forth in new Rule 1.18(d)(2) provides that when a lawyer has received material confidential information from a prospective client, representation of a client with interests materially adverse to the prospective client is not permissible unless "the lawyer who received the information took reasonable* measures to avoid exposure to more information than was reasonably* necessary to determine whether to represent the prospective client."[10]  Additionally, Comment [3] to Rule 1.18 states that "[i]n order to avoid acquiring information from a prospective client that would prohibit representation as provided in paragraph (c), a lawyer considering whether or not to undertake a new matter must limit the initial interview to only such information as reasonably* appears necessary for that purpose."

SkyBell argues that Orrick took no measures to avoid exposure to more information than was reasonably necessary to determine whether to represent SkyBell. (Mot., Docket No. 48 at 20.)  SkyBell argues that Orrick placed no limitations on the information that was to be shared whatsoever, and to the contrary, Orrick encouraged SkyBell to be as open as possible with information related to the potential lawsuit against Ring.  (Id.; Scalisi Decl., Docket No. 48-2 ¶ 15 ("During our communication with Orrick, we were never informed that we should withhold any information

---

[9] The Court deems the patent enforcement litigation that was the subject of Orrick's Written Proposal and the instant case the "same matter" for purposes of new Rule 1.18.  The Proposal clearly contemplates a patent enforcement action by SkyBell against Ring, identifies the same Ring accused products named in the FAC, and identifies several of the same patents-in-suit.  (Scalisi Decl., Docket No. 48-2, Ex. A at 16–17.)

[10] The Court need not address the exception set forth in new California Rule of Professional Conduct 1.18(d)(1) because SkyBell has not given informed written consent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-00014 JVS (JDEx)                     Date   September 18, 2018

Title        Skybell Technologies, Inc. v. Ring, Inc.

concerning our planned lawsuit until it had decided to take the case.  Indeed, we were
encouraged to provide all of the information we had, and we complied where
possible.").)  Additionally, SkyBell argues that the information provided to Orrick
during the pitch process went far beyond what was reasonably necessary for it to
determine whether to represent SkyBell.  (Mot., Docket No. 48 at 19.)  SkyBell argues
that Orrick crossed this benchmark, at the earliest, when it informed SkyBell that it
had cleared conflicts, and at latest, when it prepared the nearly 40-page Written
Proposal aimed at gaining SkyBell's business.  (Id.)

        In response, Orrick argues that it was reasonable for Jensen to receive the
information he did from SkyBell in the circumstances of the pitch process.  (Opp'n,
Docket No. 53 at 17.)  Orrick argues that it was reasonable for Jensen to believe that
SkyBell was advised by independent counsel as to the scope of disclosures it should
be making as part of the pitch process.  (Id.)  Additionally, Orrick argues that it
needed to develop a strong understanding of the facts and merits of the case to prepare
a proposal and structure the fees.  (Id.)  Orrick argues that its Written Proposal
included a proposed alternative fee arrangement, and in order to determine whether
this arrangement would be feasible, Orrick required fairly extensive information from
SkyBell.  (Id.)  Orrick argues that it is common for lawyers pitching patent cases to
receive extensive disclosures.  (Id. at 17–18.)  Moreover, Orrick concedes that while it
of course wanted the work, it first needed to evaluate the potential matter to make sure
the fees made sense.  (Id. at 18.)  In support of its opposition, Orrick puts forth the
expert declaration of Stephen S. Korniczky ("Korniczky Decl.").  (Korniczky Decl.,
Docket No. 53-3.)  Korniczky is an experienced patent attorney and trial lawyer and
has participated in hundreds of pitches for patent litigation in his career.  (Id. ¶¶ 2–7.)
Korniczky opines that the level of interaction that occurred between Orrick and
SkyBell during the pitch process was entirely typical for patent litigation.  (Id. ¶ 21.)
Additionally, Korniczky states that it is inconsistent with his experience that a law
firm needs no more than the information needed for an initial conflict check to
determine whether to accept an engagement.  (Id. ¶ 22.)

        The Court finds that Orrick failed to take reasonable measures to avoid
exposure to more information than was reasonably necessary to determine whether to
represent SkyBell.  Rule 1.18(d)(2) not only requires that the information received by
the attorney be reasonably necessary to determine whether to represent the prospective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

client, but it also states that the attorney must take "reasonable measures" to avoid or limit exposure to this information.  Likewise, Comment [3] to the Rule states that the attorney "must limit the initial interview" to receive only information that is reasonably necessary.  The Rule explicitly contemplates that the attorney take some type of affirmative step or act to limit or avoid exposure to more information than is necessary.

Crediting Jensen's supplemental declaration, Orrick did take reasonable steps with regard to the information it received for purposes of a conflicts check.  However, no further steps were taken after Orrick advised that the conflicts had been cleared.  A one hour telephone conversation and a three-hour in person meeting then ensued.

It is not enough that the information the attorney received, in hindsight, was reasonably necessary to determine whether to represent the prospective client.  There must be some type of preceding or concurrent affirmative act that is carried out by the attorney to limit the disclosure. Scalisi states in his declaration that during the communications between Orrick and SkyBell, SkyBell's representatives were never informed by Orrick that they should withhold any information and were actually encouraged to provide all of the information they could.  (Scalisi Decl., Docket No. 48-2 ¶ 15.)  While Orrick claims that it was reasonable for it to believe that SkyBell was well-advised by independent counsel as to the scope of the disclosures it should be making, this does not constitute an affirmative act on the part of Orrick to limit its exposure.  (Opp'n, Docket No. 53 at 17.)

At oral argument, Orrick contended that if it only acquired reasonably necessary information, it necessarily took measures to ensure that it only received necessary information.  Orrick also argued the any caution would be so vague and meaningless as to have no practical force whatsoever.  The Court rejects both points.

First, Orrick's formulation of the Rule, as requiring disqualification only if the "the exposure [went beyond] information . . . reasonably necessary to determine whether to represent the prospective client," completely omits any reference to the "reasonable measures" requirement.  (Opp'n, Docket No. 53 at 13.)  Orrick's analysis likewise overlooks this aspect of the Rule. The "reasonable measures" requirement is integral to the Rule.  It acts as a prophylactic to ensure that both the attorney and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-00014 JVS (JDEx)               Date   September 18, 2018

Title      Skybell Technologies, Inc. v. Ring, Inc.

prospective client are aware of the limitations on the disclosure of confidential information.

Second, the contention that a caution would have been meaningless ignores the sophisticated environment in which the discussions took place.  It also ignores Jensen's statement that he in fact gave a cautionary instruction in soliciting information for a conflicts check.  He told SkyBell's outside patent counsel to "limit the information he provided to me about the potential representation only to the information I needed to run a conflicts check." (Jensen Supp. Decl. ¶4.)  The language which Jensen used was neither vague nor talismanic boilerplate, and presumably at least Jensen thought he was communicating effectively.  There is no reason why a similar warning could not have been given before Jensen embarked on a far less structured interchange in the course of his subsequent telephone call and meeting where the possibility of receiving confidential information was open ended.  A warning was not given; Jensen's own conduct demonstrates that it could have been and should have been.

In his Supplemental Declaration, Jensen raises a second point for the first time:

> Although I do not remember the exact dates of all my discussions with SkyBell about a potential contingency arrangement, I recall that, at the time SkyBell shared confidential information with me, SkyBell knew that there was no guarantee Orrick would be able to accept the matter on a contingency basis.

(Jensen Supp. Decl. ¶ 7.)  No similar statement appears in Jensen's original declaration.  While the Written Proposal does not contain a contingent fee option, there is no mention in the Fee Proposal and Budget Section that such an arrangement is unlikely or even off the table.  To the contrary, Orrick states that it "does have experience with a variety of alternative fee arrangements and would be willing to discuss such an arrangement if of interest to SkyBell." (Written Proposal, p. 31.)  Again, Jensen's Supplemental Declaration comes after the Court issued its tentative and distinguished the present situation from Vaccine Center discussed next.

In support of its position, Orrick cites an unpublished, out-of-district authority

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

applying a nearly-identical Nevada rule regarding duties to prospective clients, Vaccine Center, LLC v. Glaxosmithkline LLC, No. 2:12–cv–01849–JCM–NJK, 2013 WL 1787176 (D. Nev. Apr. 25, 2013).[11]  (Opp'n, Docket No. 53 at 17–18.)  In Vaccine, the court found that an attorney "took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent [a] prospective client." Id. at *1.  In reaching this conclusion, the court focused on the fact that the attorney made clear to the prospective client from the outset that his firm did not normally take cases on a contingency basis, but that he would review any material or documents in order to assess whether it would be economically viable to represent the client.  Id.  In its tentative, the Court distinguished Vaccine Center

> While Orrick argues that the financial and settlement disclosures in this case were similarly reasonable for Orrick to obtain under the circumstances, the present case is distinguishable because unlike the attorney's preliminary statements in Vaccine that there was a significant possibility that his firm would not ultimately take the case, Orrick placed no such preliminary limitation on Orrick's representation of SkyBell.

(Tentative Order Granting Motion to Disqualify, pp. 13-14.)  Given that Orrick cited Vaccine Center in its opposition, one must wonder why it did not marshal the facts, if available, concerning reasonable measures to bring itself within the analysis in Vaccine Center.[12]

---

[11]Orrick also cites Jimenez v. Rivermark Community Credit Union, 2015 WL 2239669 (D. Or. May 12, 2015) (reasonable measures met by advising prospective clients that lawyer did not take similar cases and frequently represented creditors); Beckenstein Enterprises-Prestige Park, LLC v. Lichtenstein, 2004 WL 1966863 (Conn. Aug. 11, 2004) (reasonable measures where attorney promptly advised he would not take case when a conflict was disclosed).

[12]Hollis v. Ogeneski, 2014 WL 7589285 at * 5-6 (Conn. Super. Ct. Dec. 4, 2014), is not helpful to the analysis because it dealt with the issue of reasonable necessary information, not the issue of reasonable measures.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

The Court concludes that in light of the contradictory showing[13] before the Court, Orrick has not presented substantial evidence that at each stage of the discussions with SkyBell it took effective and "reasonable measures to avoid exposure to more information than was reasonably necessary." Orrick does not qualify for the exception set forth in new Rule 1.18(d)(2).

Furthermore, while there is support for Orrick's position that the information it received from SkyBell was necessary for it to prepare a competitive pitch and participate in the beauty contest, it is a separate matter whether the substantial disclosures that occurred were reasonably necessary for Orrick to determine whether to represent SkyBell in the patent litigation against Ring. The Korniczky Declaration lends support to the fact that in the patent litigation context, prospective clients have come to expect law firms participating in a beauty contests to conduct a substantial legal and factual analysis and offer a detailed legal strategy as part of trying to win the representation, which requires some disclosure of confidential information, especially if the law firm is proposing an alternative fee arrangement. (Korniczky Decl., Docket No. 53-3 ¶¶ 9, 12, 13–16.) Korniczky concludes that, as a result, "it is common in the industry for a firm to receive [confidential] information as part of a pitch process in order to evaluate the litigation." (Id. ¶ 16.) However, simply because the disclosure of some or a substantial amount of confidential information is common practice among firms engaging in beauty contests for patent litigation does not mean that the firms necessarily need all of this confidential information to determine whether they would accept the engagement. Presumably, most firms have already determined that they would represent a client if selected before expending significant time and resources to participate in lengthy and extensive pitch processes. Orrick even concedes as much, despite adding the qualification that it needed access to SkyBell's confidential information to ensure that the fees made sense before it could know for sure. (Opp'n, Docket No. 53 at 18.) Moreover, Orrick's communications with SkyBell went well beyond an "initial interview," as Jensen continued to communicate with SkyBell until as recently as March 2018, five months after the initial November 1, 2017 phone call took place. (Scalisi Decl., Docket No. 48-2 ¶ 14.) It is a close question whether the information Orrick received was reasonably necessary for it to

---

[13]In his latest declaration, Scalisi again confirms that at neither before nor after delivery of the Written Proposal were cautions given. (Scalisi Decl., ¶ 11, Docket 67-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

determine whether to represent SkyBell. Nonetheless, the Court need not decide this issue because it has already determined that Orrick did not take any reasonable measures to avoid exposure to such information.

Therefore, Orrick does not qualify for the exception set forth in new Rule 1.18(d)(2).[14] Accordingly, pursuant to new Rule 1.18(c), Orrick may not represent Ring in the instant matter against SkyBell.

**C.    The Court's Conclusion Is Consistent With California Case Law and the Old California Rules of Professional Conduct**

The Court's conclusion is consistent with the old version of the California Rules of Professional Conduct and California case law that predates the new Rules. In the old version, Rule 3-310(E) provided that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Additionally, California courts have held that "[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." SpeeDee Oil, 20 Cal. 4th at 1146. "For the same reason, a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm." Id.

"The fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of the lawyer, although actual employment does not result." Id. at 1147–48 (internal quotations and citation omitted). "When a party seeking legal advice consults an

---

[14] Because the Court finds that Orrick did not take reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent SkyBell, it need not consider the sufficiency of Orrick's ethical screen or written notice. See Cal. R. Prof. Conduct § 1.18(d)(2)(i)–(ii) (new version).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
| Title | Skybell Technologies, Inc. v. Ring, Inc. | | |

attorney at law and secures that advice, the relation of attorney and client is established prima facie." Id. at 1148 (internal quotations and citation omitted). "[A] formal retainer agreement is not required before attorneys acquire fiduciary obligations of loyalty and confidentiality, which begin when attorney-client discussions proceed beyond initial or peripheral contacts." Id. "An attorney represents a client—for purposes of a conflict of interest analysis—when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result." Id. ("Even the briefest conversation between a lawyer and a client can result in the disclosure of confidences." (citation omitted)); see also Med-Trans Corp. v. City of California City, 156 Cal. App. 4th 655, 668 (2007) ("[W]here the former contact with the attorney was a preliminary conversation that did not result in professional employment or services, the party seeking disqualification must show, directly or by reasonable inference, that the attorney acquired confidential information in the conversation.").

In certain circumstances, ethical screening can be used to avoid vicarious disqualification. See Kirk v. First Am. Title Ins. Co., 183 Cal. App. 4th 776, 792–801 (2010) (summarizing the historical development of California law regarding vicarious disqualification). "[W]hen a tainted attorney moves from one private law firm to another, the law gives rise to a rebuttable presumption of imputed knowledge to the law firm, which may be rebutted by evidence of effective ethical screening." Id. at 814. "However, if the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive." Id. "When considering a motion to disqualify a law firm on the basis of imputed knowledge in a case where the presumption is rebuttable, a trial court should consider, on a case-by-case basis, whether the ethical screening imposed by the firm is effective to prevent the transmission of confidential information from the tainted attorney." Id.

As stated above, Orrick concedes that it obtained a considerable amount of SkyBell's confidential information when it communicated with SkyBell representatives for the purpose of being retained to represent SkyBell in a patent enforcement action against Ring. (Opp'n, Docket No. 53 at 16–17.) Nonetheless, Orrick argues that the absolute rule of vicarious disqualification does not apply in this case. (Id. at 21–22.) Orrick argues that automatic disqualification applies only when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. | | |

the attorney switches sides during the same lawsuit, which did not occur here because Orrick never appeared on behalf of SkyBell and the case was not yet filed at the time of the pitch.  (Id. at 22.)  Orrick argues that, as a result, the Court must consider the motion on a case-by-case basis to determine whether its ethical screen is sufficient.  (Id.)

The Court is not persuaded.  While SkyBell's case against Ring was not yet filed at the time of Orrick's pitch, SkyBell had initiated the process of bringing the lawsuit against Ring, in that it was interviewing firms for that very purpose.  Moreover, as stated above, for purposes of a conflict of interest analysis under California law, "[a]n attorney represents a client . . . when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result."  SpeeDee Oil, 20 Cal. 4th at 1148.  Orrick cannot reasonably dispute that the Written Proposal constitutes legal advice, given that it contains multiple pages of recommendations and legal strategy for SkyBell's patent enforcement action against Ring.  Therefore, SkyBell was Orrick's client for purposes of a conflict of interest analysis despite the fact that SkyBell ultimately hired a different firm.  Thus, by rendering legal advice to SkyBell and then switching sides in what later turned out to be the same matter, Orrick would be automatically disqualified under California law.

Therefore, the Court's conclusion that Orrick is disqualified from representing Ring in the instant matter is consistent with California case law and the old version of the California Rules of Professional Conduct.

**D.     Policy Considerations**

As noted by both Orrick and SkyBell, a variety of policy considerations are implicated by this motion.  (Opp'n, Docket No. 53 at 23–25; Reply, Docket No. 57 at 15–18.)

Orrick argues that the Court must consider Ring's right to the counsel of its choosing and that Roberts was chosen because of his close relationship with Ring.  (Opp'n, Docket No. 53 at 23–24; Siminoff Decl., Docket No. 54-1 ¶¶ 1–4.)  Orrick argues that disqualifying Roberts would substantially disrupt this litigation because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|

| Title | Skybell Technologies, Inc. v. Ring, Inc. |
|---|---|

Ring would be forced to retain new lead counsel that would have to get up to speed regarding the defense of SkyBell's claims and Ring's own affirmative counterclaims. (Opp'n, Docket No. 53 at 24.)  Orrick also argues that the Court must consider the possibility that tactical abuse underlies the motion, and the potential for abuse by plaintiffs in inviting large swathes of firms to pitch in an effort to conflict them out of representing potential defendants.  (Id. at 24–25.)  Additionally, Orrick argues that a rigid approach to disqualification would limit attorney mobility, which has become common practice, and unfairly punish Roberts for electing to join Orrick.  (Id. at 25.)

SkyBell, on the other hand, argues that allowing Orrick to obtain SkyBell's material confidential information regarding the Ring litigation and then turn around and represent Ring in the same matter would undermine the important policy considerations in preserving public trust in the integrity of the bar and the fairness of the judicial process.  (Reply, Docket No. 57 at 15–16.)  Additionally, SkyBell argues that there is no evidence to suggest any tactical abuse, given that it was genuinely interested in potentially hiring Orrick to represent it and could never have predicted that Ring's lead counsel would ultimately join Orrick.  (Id. at 16.)  Moreover, SkyBell argues that Orrick and Roberts were aware of the conflict of interest and potential for disqualification before Roberts joined the firm, and they cannot now complain that they will be disqualified for a conflict of their own making.  (Id. at 18.)

"Disqualification motions involve 'a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility.'"  Kirk, 183 Cal. App. 4th at 792 (quoting SpeeDee Oil, 20 Cal. 4th at 1145).  The Court must consider the "client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion."  Id. (quoting SpeeDee Oil, 20 Cal. 4th at 1145).  Additionally, the Court must consider that "increased mobility of lawyers between firms calls for a less rigorous application of the disqualification rules."  In re Cty. of L.A., 223 F.3d at 996–97 ("The changing realities of law practice call for a more functional approach to disqualification than in the past.").  However, "the most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation."  SpeeDee Oil, 20 Cal. 4th at 1147 ("Such patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-00014 JVS (JDEx) | Date | September 18, 2018 |
|---|---|---|---|
| Title | Skybell Technologies, Inc. v. Ring, Inc. | | |

duty of loyalty and the duty to preserve confidences."). Thus, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." Kirk, 183 Cal. App. 4th at 792 (quoting SpeeDee Oil, 20 Cal. 4th at 1145). "The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." Id. (quoting SpeeDee Oil, 20 Cal. 4th at 1145).

The situation before the Court raises serious ethical concerns about firms obtaining substantial confidential information from a prospective client while participating in a competitive pitch process, and after failing to be selected, turning around and representing the other side in the same matter. To be sure, the present circumstances could not have been reasonably anticipated by either side. However, the fundamental problem is still present and no less serious. While prospective clients in the patent litigation context may have come to expect law firms seeking to represent them to offer detailed proposals that require the disclosure of confidential information, it is the responsibility of the firms that participate to ensure that they are aware of and abiding by appropriate ethical standards. Orrick did not do so in this case. It obtained considerable confidential information from SkyBell, failed to take reasonable measures to limit or condition this disclosure in any way, and now seeks to represent the adverse side in the same matter. While disqualification may seem like a drastic result from Orrick's perspective, Orrick was aware that disqualification was a risk when Roberts joined the firm, and SkyBell should not be the one to pay for Orrick's failure to meet the ethical requirements here. Therefore, policy considerations weigh in favor of disqualification.

## IV. CONCLUSION

For the foregoing reasons, the Court **grants** the motion to disqualify.

At the hearing, Ring asked the Court to stay the proceeding for thirty days to allow for transition to new counsel. SkyBell does not object. (Skybell's Supplemental Brief, p. 7, Docket No. 67.) The Court stays the matter, and sets a status conference for October 15, 2018 at 11:30 a.m. The parties shall submit a joint report seven days in advance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-00014 JVS (JDEx)                    Date    September 18, 2018

Title    Skybell Technologies, Inc. v. Ring, Inc.

Ring also asked for a determination that its present counsel be permitted to transfer its work product to new counsel.  There is no evidence that Roberts or any member of the Ring Litigation group has interacted with anyone on the Orrick team which pitched the representation to Skybell or otherwise been tainted by joining Orrick.  SkyBell partially acquiesces in the request, and does not object to transfer of work product created prior to Orrick's assumption of the representation.  (Id.) SkyBell is directed to file a response within seven days.

|  | : | 00 |
|---|---|---|
| Initials of Preparer | kjt |  |